STATE of Missouri, Respondent,

v.

George Chris MAYFIELD, Appellant.

No. 57787.

Supreme Court of Missouri,
Division No. 1.

March 11, 1974.

John C. Danforth, Atty. Gen., Neil MacFarlane, Asst. Atty. Gen., Jefferson City, for respondent.

James L. McMullin, Hill & McMullin, Kansas City, for appellant.

1. We have jurisdiction because the appeal is one of the numerous first degree murder cases pending here prior to the decision in Parks v. State, 492 S.W.2d 746 (Mo. banc 1973) and which we retained under our order of April 9, 1973, made pursuant to the procedure inaugurated in Foremost-McKesson, Inc. v. Davis, 488 S.W.2d 193 (Mo. banc 1972), in the interest of the timely and orderly disposition of cases.

SEILER, Judge.

This is an appeal from a judgment of conviction of first degree murder with a life sentence.[1]

The substance of the amended information on which defendant was tried was that he, in concert with others, made an assault upon one John H. Harsh, by shooting him with a shotgun, thereby producing his death. The shooting occurred in the course of the holdup by defendant and others of a cafe in Kansas City known as Johnny's Lunch, the night of October 30, 1969.

The only issue on appeal goes to the remarks and conduct of the assistant prosecuting attorney in closing argument. To demonstrate his point, the prosecutor suddenly pulled out from under his coat and waved before the jury a not-in-evidence and unidentified sawed-off shotgun, asking how many had seen it concealed while he was talking to them. This to show that the man with defendant likewise could have entered the cafe, taken a seat at the counter, and yet keep concealed under his coat a sawed-off shotgun about to be used in the holdup. We find the prosecutor's conduct impermissible, requiring a reversal and remand for a new trial.

There is no contention the state did not make a submissible case. One of the participants in the holdup was a state's witness. He testified that he and four other men, including defendant, were driving around North Kansas City one night when they decided the cafe would be a good place to rob. There was considerable shootin on both sides in the course of the robbery. Evidence established that the fatal wound of the victim, Mr. Harsh, was caused by a shotgun charge in the side of the head and neck.

The state's case was that defendant and one Roscoe Ford entered the cafe, defend-

ant with a pistol and Ford with a sawed-off shotgun, seated themselves at the counter, and ordered coffee. A third man, Melvin Owens, armed with a pistol, was outside the cafe door as the lookout. Ford was served a cup of coffee and then the shooting started. The deceased, John Harsh, had a .32 caliber revolver which he apparently fired five times. The state contended, based on circumstantial evidence, that the shotgun blast which killed Mr. Harsh, was fired by Roscoe Ford shooting from or under the counter; that in the melee Ford was wounded in the hand and was helped out of the cafe by defendant, who was firing his pistol as they left. The state also contended that Melvin Owens fired several pistol shots into the cafe from the outside.

Defendant contended that he and Ford entered the cafe armed with pistols and that Melvin Owens had the sawed-off shotgun outside. Defendant testified that the plan was to enter the cafe, snatch the money out of the cash register and leave; that when he and Ford sat down at the counter and ordered coffee, defendant realized that there were two men on duty in the cafe and not just one; that he became skeptical of the chance of success and told Ford they should leave; that about that time Melvin Owens entered the front door with a shotgun and that it was then the shooting started.

There was testimony from the police that the shotgun wound received by Mr. Harsh was made by a .410 gauge shotgun. However, no shotgun was found at the scene or recovered by the police and a shotgun was not in evidence in the case. In addition, there was no description of the size of the shotgun or length of the stock or barrel, other than its being referred to as a "sawed-off shotgun."

The state sought and actively argued for the death penalty. The assistant prosecutor, in his opening argument, referred to the brutal killing of Mr. Harsh and asked the question, "Now, who had the shot-

gun?" The prosecutor said defendant contended the man outside the cafe had the shotgun, but the prosecutor said that Roscoe Ford, the man at the counter with defendant, had the shotgun; that defendant and Ford were going in to hold up the place; that the victim, Mr. Harsh, started the shooting but that he would not have started shooting at customers unless they had first produced weapons—in this instance a sawed-off shotgun and a pistol. The prosecutor argued that any shooting that Melvin Owens did was through the front windows of the cafe from the outside with a pistol.

The next argument was by defendant's counsel. Part of it dealt with the matter of which man had the shotgun. Counsel argued that if a man had walked in with a shotgun the restaurant operator would not have served him a cup of coffee. Counsel argued that it was unbelievable that a man sitting at a counter with a shotgun would be served a cup of coffee.

In his final argument, the prosecutor said he wanted to respond to the contention that the man with defendant could not have ordered and been served a cup of coffee and at the same time have a shotgun. He said to the jury, ". . . then I ask you how many of you saw this one that I had concealed under my coat during the time that I was talking with you? And I'll submit to you that it didn't take any longer than that for those two people to order the coffee in this case." With this the prosecutor pulled out a sawed-off shotgun which he had concealed under his coat and waved it in front of the jury. This, of course, brought objections from defendant and a request for mistrial. There followed an extended colloquy between the court and opposing counsel outside the hearing of the jury. Although promptly overruling the motion for mistrial, the court twice was about to sustain defendant's request for an instruction to the jury to disregard what had occurred, but each time the prosecutor persuaded the court not to do so. The court ultimately over-

ruled the requested instruction and the trial proceeded.

The following appears in the state's brief: "From the record it is obvious the prosecuting attorney had concealed a sawed-off shotgun under his coat when he began the final portion of his closing argument. He then exhibited the weapon to the jury to show that a sawed-off shotgun could, in fact, be concealed from sight. It is this demonstration that the appellant objects to and claims is reversible error."

There was no foundation for the exhibition of an unidentified sawed-off shotgun to the jury by the prosecutor. There is no evidence in this record as to the size of the sawed-off shotgun used in the robbery except that it was a .410. There is nothing as to the length of barrel or overall length. Nor is there any evidence in the record as to what sort of clothing was worn by defendant's companion who entered the cafe and sat down with defendant at the counter. Certainly there is nothing in the record to support a supposition that the coat worn by the assistant prosecutor under which he concealed the shotgun was in any way similar in length, size, girth, or thickness to whatever sort of clothing defendant's companion was wearing.

Counsel went far beyond the permissible bounds of oral argument. He, in effect, was conducting an experiment in front of the jury with no factual basis to support it whatever. Additionally, the prosecutor was exhibiting before the jury a sawed-off shotgun in a case where he was seeking the death penalty without the weapon which he was exhibiting being tied in any way to defendant or even to the crime in general.

In State v. Wynne, 353 Mo. 276, 182 S. W.2d 294 (1944), the prosecutor demonstrated during cross-examination with a gun not belonging to the defendant and not connected with the murder. The prosecutor was questioning the witnesses as to whether the extent that the gun stuck out of his hip pocket, as he demonstrated it, was about the extent a gun had been seen by the witnesses from time to time protruding from the hip pocket of a man who habitually carried a pistol in his hip pocket and who was present when the deceased was shot. The court reversed the conviction because of the erroneous exhibition of the pistol, pointing out (182 S.W.2d 1. c. 294): ". . . The stated purpose of its use was to demonstrate how far a pistol stuck out of John Thompson's pocket. And a demonstration or illustration with a gun might have some probative force for that purpose. But entirely aside from the relevancy and materiality of the fact, under the circumstances of this case, of how far a pistol stuck out of his pocket, there was not sufficient proof of similarity of circumstances to warrant the demonstration . . ."

The court stated further (182 S.W.2d 1. c. 300): ". . . The objection to the introduction of weapons or other demonstrative evidence, especially when not connected with the defendant or his crime, on the ground of unfair prejudice is based on sound psychological and philosophical principles. They are: 'First, there is a natural tendency to infer from the mere production of any material object, and without further evidence, the truth of all that is predicated of it. Secondly, the sight of deadly weapons or of cruel injuries tends to overwhelm reason and to associate the accused with the atrocity without sufficient evidence.' 4 Wigmore, Evidence, Sec. 1157, p. 254."

The state defends the action of the trial court on the basis that the statement and demonstration were justified retaliation to the argument of the defendant and that production and exhibition of the shotgun were in the nature of argument.

We cannot agree. The prosecutor was the first one to open up the subject. He argued it in his opening argument. Defendant's counsel answered the point as stated earlier herein. The prosecutor was then free to counter in his final argument

by arguing to the jury that the weapon could have been concealed under the clothing of defendant's companion, etc. (assuming there was evidence to support the argument). But the prosecutor cannot, under the guise of retaliatory argument, exhibit in front of the jury a lethal weapon as a part of an experiment with no foundation for its exhibition.

The conduct of the prosecutor was impermissible and because of it the cause must be reversed and remanded for a new trial.

In ruling as above we are not overlooking the fact that when the trial court ruled on the motion for new trial, the court expressed the opinion that what the prosecutor did was analogous to retaliatory argument and although the court described what took place as a "brandishing of the shotgun", the court said that he was watching the jury when the demonstration was made "and from my observation what happened had no prejudicial effect on him. And that is my finding." Nevertheless, with all due respect to the trial judge, we cannot accept this disposition of the matter. We do not believe that it can reasonably be said that what took place in the courtroom had no prejudicial effect simply because the trial court so concluded from his observation of the jurors at that particular moment. This sort of exhibition is most unusual and we do not believe it follows that it left the mind of the jurors merely because the trial court observed no reaction on their part at the moment it took place. The record does not demonstrate that the jury disregarded or could not have been influenced by the exhibition, and error of this kind, quite similar to error in admission of evidence, should not be declared harmless unless it is so without question. State v. Degraffenreid, 477 S.W.2d 57 (Mo. banc 1972). Additionally, to hold that this is no more than harmless error would only encourage such actions in fu-

ture cases and we do not believe this should be done.

Accordingly, the judgment is reversed and the cause remanded for a new trial.

BARDGETT, P. J., concurs.

HOLMAN, J., concurs in result.