**STATE of Missouri, Respondent,**

v.

**Franklin HUFF, Appellant.**

**Franklin HUFF, Movant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 56208, 59824.**

Missouri Court of Appeals, Eastern District, Division Four.

May 19, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 9, 1992.

Application to Transfer Denied July 21, 1992.

Melinda Kay Pendergraph, William J. Swift, Columbia, Deborah B. Wafer, St. Louis, for appellant.

William L. Webster, Atty. Gen., Robert P. Sass, Asst. Atty. Gen., Jefferson City, for respondent.

SMITH, Presiding Judge.

Defendant appeals from his conviction of assault in the first degree and armed criminal action and the resultant consecutive thirty and ten year imprisonment sentences. He also appeals from the denial of his post-conviction motion. The appeals have been consolidated. We affirm.

On March 1, 1987, defendant and his brother went to the residence of Steven Bakan. They spoke to his girl friend who advised them that Bakan was not at home. Defendant replied "Well fuck you bitch" and broke the glass in the storm door. He then left. Bakan returned to the home shortly thereafter and defendant called him on the telephone. A heated argument ensued. Defendant testified that it concerned a debt allegedly owed by Bakan to defendant and that during the conversation Bakan refused to pay. Defendant testified that he threatened Bakan and if he did not pay the money "that he'd pay for it." Bakan allegedly stated to defendant "I ain't no punk. If you want to play with guns, we can play with guns. Come on down." The state's evidence was that Bakan then picked up an unloaded deer rifle and went outside with his girl friend to move his automobile into his garage fearful that defendant would attempt to damage the vehicle. Defendant's evidence was that Bakan loaded his rifle and went outside.

Bakan moved his automobile and as he was returning to the house defendant, accompanied by someone, arrived at the residence. Defendant stepped out of the vehicle armed with a shotgun. Bakan pushed his girl friend, Lori, to the ground and she then heard three shots. Defendant left. Bakan was shot in the head and eventually lost an eye as a result of the shooting. The state's evidence was that Bakan had put the unloaded gun down prior to moving the vehicle and was unarmed at the time of the shooting.

Defendant's evidence was that following the telephone conversation he returned to

his parents' home and picked up his shotgun. He then went to Bakan's residence with the intention to shoot out the windows in Bakan's automobile. When he arrived at the Bakan residence he exited his vehicle armed with the shotgun. Someone called his name and immediately fired two shots at him. He returned the fire and eventually his companion fired one shot into the Bakan residence. He then left. The court instructed on self-defense.

■ Defendant raises seven issues on direct appeal and one issue on appeal from the denial of his post-conviction motion. Initially, he contends the trial court erred in allowing a demonstration by a firearms expert utilizing three shotguns which were totally unrelated to the case. The shotgun fired by the defendant had been thrown in the river by him immediately after the shooting. The courts of this state have continually enforced the general proposition that weapons unconnected with either the accused or the offense lack any probative value and their admission is prejudicial and reversible error. *State v. Grant*, 810 S.W.2d 591 (Mo.App.1991) [1]. There are exceptions to the general proposition. *State v. Bullington*, 684 S.W.2d 52 (Mo. App.1984) [5]; *State v. White*, 654 S.W.2d 288 (Mo.App.1983) [5]. We find no error in the trial court allowing the firearms expert to utilize the three weapons in demonstrating to the jury the difference in characteristics of the three different shotguns. The weapons were not admitted into evidence. It was made extremely clear to the jury that the shotguns were not connected to the crime or to the defendant, that they were being utilized solely to explain the testimony of the firearms expert. Specifically, the expert utilized two of the weapons to demonstrate the different ejection characteristics of single shot versus a pump gun. The third gun was utilized to explain the nature of the shot pattern obtained from a sawed-off shotgun which the state contended defendant utilized. The expert's testimony was relevant to explain the circumstances of the shooting and the location of the participants. The use of the weapons was not inflammatory and the testimony they were used to explain was relevant. We find neither error nor prejudice.

■ Four of the remaining points on direct appeal and the sole point on appeal from denial of the post-conviction motion are directed to defendant's claim of self-defense. Four of the points are specifically directed to the issue of who fired first and one of the points attacks the failure to hypothesize Bakan's potential status as the initial aggressor. We find it unnecessary to review these points, because even taking the evidence in the light most favorable to defendant there was no basis for a self-defense instruction. The evidence was clear from both the state's and defendant's witnesses that defendant went to Bakan's home, made obscene comments to Bakan's girl friend, and intentionally broke the storm door. He did these things by his own admission to get Bakan's attention. He then placed the call to Bakan which resulted in the heated discussion. He issued a threat to Bakan which was ambiguous but which could be interpreted as a threat to kill or injure Bakan. According to defendant's evidence Bakan then issued a challenge. Either in response to that challenge or to implement his own threat defendant went to his parents' home and retrieved a shotgun. Within minutes of the threatening telephone call he arrived at Bakan's residence and emerged from his vehicle with the shotgun, with the admitted intent to destroy Bakan's property by firing at it. Bakan was at the time in the front yard of his own residence and saw the arrival of defendant who was openly carrying the shotgun. In short, defendant originated the controversy on his first visit to Bakan's home, continued it with the threatening telephone call, armed himself with the intention of damaging Bakan's property, returned to Bakan's home visibly armed, and under defendant's testimony was then shot without having any further opportunity to threaten Bakan.

A person can lawfully use force to protect himself against an unlawful attack. However, if he is the initial aggressor, he is not justified in using force to protect himself from the counter-attack which he pro-

voked. MAI–CR3rd 306.06. It is questionable that defendant was ever under *unlawful* attack. His conduct during the day of the incident was such as to place any reasonable person in fear of violence. His arrival at the home of the victim fully armed with an extremely dangerous weapon clearly visible would cause any reasonable person to anticipate the potential of a life threatening attack and place him in fear of his life or those of his family. There were present in the home of the victim in addition to himself, his girl friend and two small children. Defendant's Dodge City mentality that self-defense is determined by who "drew" first is simply not the law. Defendant's conduct throughout the day had to cause him to believe that if he went to the victim's home visibly armed the victim would anticipate and fear a threat to his life or to his family and would utilize force to repel that threat. Such an attack might not be unlawful.

More importantly, as a matter of law the defendant was the initial aggressor and he never withdrew from that status. His initial visit to the victim's home and his conduct there, his telephone call and threat to the victim, his trip to his parents' home to obtain a weapon, his return to the victim's home fully and visibly armed, and his purpose in going to the victim's home to commit a crime by destroying the victim's property mark him as a matter of law as the aggressor in this incident. He was not entitled to an instruction on self-defense. We do not fault the trial court, in an abundance of caution, in giving such an instruction. We have consistently indicated that if any question of the availability of such a defense exists such an instruction should be given. We hold however, that under the facts of this case, and based on defendant's own evidence and theory, defendant was not entitled to raise self-defense and no prejudice could result to him from the trial court rulings now raised on appeal. The complained of evidentiary rulings would merely have gone to the issue of who fired the first shot. As we have previously indicated that issue was not relevant. And no error can be premised upon the failure to give a different self-defense instruction than was actually given when defendant was entitled to no self-defense instruction at all.

Defendant also contends he was entitled to an instruction on second degree assault based on the concept that he acted under the influence of sudden passion arising from adequate provocation. In order to reduce the crime to second degree there must be a sudden or unexpected encounter tending to excite passion beyond control. The offense must occur before there is any time for the passion to cool. It is the general rule in Missouri that words, no matter how opprobrious or insulting are not sufficient to show adequate provocation. *State v. Simmons*, 751 S.W.2d 85 (Mo.App.1988) [4–7]. Further the passion must arise at the time of the offense and not be solely the result of former provocation. Section 565.002(7) RSMo 1986. Defendant cites to the telephone call as the origin of the provocation. Obviously any provocation therein was solely verbal. That call did not occur at the time of the offense but was a former provocation if it was a provocation at all. After the call the defendant went to his parents' home to arm himself and then traveled to the victim's home. There was ample time for the passion to cool. Defendant testified that his purpose in going to the home was to damage victim's vehicle as punishment for the victim's refusal to pay an alleged debt. He did not by his testimony, therefore, place the cause of the incident on sudden passion arising from the telephone call. There was no basis for the giving of a second degree assault instruction.

Finally, defendant contends that the court committed plain error in failing to remove a juror who was observed by the court to be dozing. No objection or request for relief was made at trial. We have reviewed the record and do not find an abuse of discretion by the trial court in its handling of the matter nor does the record indicate any prejudice to the defendant from the incident. *Yoon v. Consolidated Freightways, Inc.*, 726 S.W.2d 721 (Mo. banc 1987) [1, 2]; *State v. Cook*, 782

S.W.2d 762 (Mo.App.1989); *State v. Tabor*, 657 S.W.2d 317 (Mo.App.1983).

Judgment of conviction and order dismissing post-conviction motion affirmed.

KAROHL and AHRENS, JJ., concur.