STATE of Missouri, Respondent,

v.

Jason KELLY, Appellant.

Jason KELLY, Appellant,

v.

STATE of Missouri, Respondent.

Nos. WD 46975, WD 48330.

Missouri Court of Appeals,
Western District.

Aug. 23, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied
Nov. 22, 1994.

Laura G. Martin, Asst. Appellate Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

Before SMART, P.J., and KENNEDY and ULRICH, JJ.

ULRICH, Judge.

Jason Kelly appeals his convictions of one count of murder in the second degree, a class A felony, § 565.021.1, RSMo 1986; and one count of armed criminal action, an ungraded felony, § 571.015, RSMo 1986, following jury trial. Mr. Kelly also appeals the order denying his Rule 29.15 postconviction motion without an evidentiary hearing. The appeals are consolidated.

Mr. Kelly raises five points on appeal. He claims that (1) the trial court erred in failing to declare a mistrial when the state permitted the venire to view a shotgun not involved in the alleged crimes during voir dire and in admitting the shotgun into evidence; (2) in admitting into evidence an expended shotgun shell found at a location other than the site of the crime; (3) in permitting the state to remove by peremptory strikes three venire persons without compelling the state to offer age-neutral explanations for the use of the peremptory strikes; (4) in defining reasonable doubt by using MAI–CR 3d instructions 300.02 and 302.04; and (5) in denying Mr. Kelly's Rule 29.15 postconviction motion without an evidentiary hearing, Mr. Kelly claiming that his trial counsel failed to exercise the customary skill and diligence required of a reasonably competent attorney under the same or similar circumstances by failing to present the trial testimony of a witness who would have testified that Mr. Kelly was not inside the house at the crime scene when the crimes occurred.

The judgments of conviction are affirmed. The motion court's order denying Mr. Kelly's postconviction motion without a hearing is affirmed.

Tammy Allen, Cheryl Allen, Tammy's mother, and Vicky Allen, Tammy's sister, returning from Truman Medical Center at approximately 3:00 a.m. to 3:30 a.m. on July 31, 1991, observed Mr. Kelly run from the house located at 6219 Peery, the house next door to the one in which the Allens lived. They observed him carrying a shotgun. The Allens knew Mr. Kelly prior to July 31. With Mr. Kelly was another person whom they knew to be Torrid Smith. Mr. Smith was observed carrying a pistol in a rear pocket. Approximately fifteen minutes after they observed Mr. Kelly and Mr. Torrid Smith, the Allens heard a gunshot.

Kathy Conklin was present at 6219 Peery. She had been at a party in the house with friends, including Wayne Fuller, the victim. During the early morning hours of July 31, 1991, Ms. Conklin awakened from sleep and began to enter the kitchen. A door was

closed separating the kitchen from the rest of the house. Ms. Conklin heard a loud sound like an "M–80." She attempted to open the kitchen door to enter the kitchen and heard an unfamiliar voice warn her to "get back." Ms. Conklin was familiar with Torrid Smith's voice and the statement warning her was not made by him.

Ms. Conklin entered the kitchen soon thereafter and saw Wayne Fuller's body lying on the floor. She telephoned 911 for assistance. The sliding glass door in the kitchen was open.

Raymond Perry resides next door to 6219 Peery. While asleep, he was awakened when he heard a gunshot. He looked out a window and saw two young white males running from the house located at 6219 Peery. The time was approximately 3:55 a.m.

Police officers arriving at the crime scene observed Wayne Fuller's body lying face down on the kitchen floor. He had been shot to death with a shotgun. Fragments of shotgun pellets were recovered from wooden cabinets in the kitchen and from Mr. Fuller's body. One whole lead pellet, lead pellet fragments, and a ball bearing were later recovered from Mr. Fuller's body by the Jackson County Medical Examiner. The whole lead pellet recovered was a number eight lead pellet. Neither shotgun nor shotgun shell was recovered from the crime scene.

Police officers arriving at the defendant's home at 116 North Drury received permission from the defendant's father to conduct a search. Police officers found a t-shirt which matched the striped t-shirt described by the Allens which they had observed on Mr. Kelly when they had seen him running from 6219 Peery. Police officers also recovered a spent shotgun shell on defendant's father's property. The shell was recovered from bushes near an alley on the fence line. The shell had the number "8" written on it. The shell had been fired from a twelve gauge shotgun.

### I

As point one on appeal, Mr. Kelly claims the trial court erred in failing to declare a mistrial because the state permitted the voir dire panel to observe a shotgun, later identified as being similar to the one the Allens saw the morning of the crime, and in admitting the shotgun into evidence. Mr. Kelly claims the court erred because no evidence was presented at trial to show that the shotgun was connected to the shooting of Wayne Fuller. The state claims the shotgun was entered into evidence to be used only for demonstrative purposes for the witnesses to state that the firearm they saw Mr. Kelly carrying shortly before the shooting was similar to the sample shotgun and to demonstrate to the jury the implausibility of Mr. Kelly's claim that he mistook the shotgun used in the murder for a pool cue. The jury was clearly informed the shotgun presented was not the shotgun used in the murder but one similar to the shotgun seen and described by witnesses.

Generally, Missouri courts have held that weapons unconnected with either the accused or the offense are inadmissible unless they possess some probative value. *State v. Douthit,* 846 S.W.2d 761, 763 (Mo.App.1993). The court in *Douthit* allowed the use of a shotgun to demonstrate the function of a gun part found in a defendant's car. In *State v. Huff,* 831 S.W.2d 752, 754 (Mo.App.1992), the court found no error in the trial court allowing a firearms expert to utilize three shotguns in demonstrating to the jury the difference in characteristics of the three types and of the different nature of the shot pattern of a sawed-off shotgun. Both in *Douthit* and in *Huff,* the jury was specifically informed that the shotguns were not connected to the crime or to the defendant and that the firearms were merely demonstrative. *Douthit,* 846 S.W.2d at 763; *Huff,* 831 S.W.2d at 754.

Several reported Missouri cases have criticized the appearance of firearms during trial which were not involved in the charged violation. The courts in some of these cases have stated that "the sight of deadly weapons or of cruel injuries tends to overwhelm reason and to associate the accused with the atrocity without sufficient evidence." *State v. Fristoe,* 620 S.W.2d 421, 427 (Mo.App.1981); *State v. Mayfield,* 506 S.W.2d 363, 365 (Mo. 1974). In *Fristoe* the court was unclear whether the prosecutor was holding the dem-

onstration firearm when he asked the victim, "On how many occasions did you have this gun pointed at you?" In *Fristoe*, the witness had not described the pistol used to commit the crime before the demonstration pistol was displayed by the state; nor was the jury in *Fristoe* admonished in any manner concerning the demonstrative firearm produced by the state. In *State v. Grant*, 810 S.W.2d 591, 592 (Mo.App.1991), no evidence was presented that the pistol used in a robbery was similar to the pistol used in court to demonstrate how and from what distance the weapon was aimed at a witness's head. *Grant* does not declare that the jury was instructed the demonstration pistol was not the actual pistol used during the charged crime. In *State v. Mayfield*, 506 S.W.2d at 365, the prosecutor exhibited to the jury from under his coat an unidentified sawed-off shotgun. The jury in *Mayfield* was not instructed to disregard the exhibited shotgun, nor was the jury clearly instructed the shotgun exhibited at trial was not the shotgun used in the crime charged.

 In the present case, after defense counsel informed the trial court that a prosecutor had brought a shotgun into court during voir dire, the judge instructed the venire panel that those persons who would sit as jurors must not infer anything from the firearm's presence, that the appearance of the firearm before the panel was inappropriate, and nobody claimed that particular shotgun was used to kill the victim. The court explained the shotgun would be offered for a different purpose and directed the venire to ignore the weapon until the evidence was presented.

 After a witness described the firearm she saw Mr. Kelly carrying shortly before the shooting, the state exhibited the shotgun to each of three witnesses for them to state that the shotgun they saw Mr. Kelly carrying looked similar to the exhibited shotgun. The court admitted the shotgun into evidence "for demonstrative purposes only" and instructed

the jury "there is no claim that this was the gun that was used in the killing; but it's being introduced only so that the witnesses can be permitted to say that it was similar to what she saw, that what she saw was similar or like it." One of the witnesses stated the barrel of the shotgun seen the early morning of July 31, 1991, was shorter than the barrel of the demonstration shotgun.

In both *Douthit* and *Huff* the demonstration shotguns were not admitted into evidence. In the present case the shotgun was admitted as evidence for demonstrative purposes after establishing the similarity of the demonstration shotgun and the shotgun seen by witnesses. The prosecutor apparently intended to have an expert compare the sizes and weights of the demonstration shotgun and a pool cue to challenge the defendant's claim that he was carrying a pool cue when observed by witnesses the early morning of July 31, 1991. However, when subsequently asking a firearms expert, who had "played pool" and had owned and had handled several types of pool cues, to compare the weight of the average shotgun and the average pool cue, the demonstrative shotgun was not re-exhibited to the jury.[1]

A prosecutor's entry into the courtroom during voir dire with a shotgun in plain sight was improper. The trial court, however, adequately instructed the jury, and no prejudice resulted from the misconduct.

Exhibiting at trial the demonstration shotgun to permit witnesses to state that it was similar to the one they saw in the defendant's possession shortly before the victim was shot was not error. The demonstration shotgun was exhibited and offered after witnesses first described the shotgun they saw and the court instructed the jury that the shotgun exhibited was not the shotgun used to kill Mr. Fuller. The state apparently intended to demonstrate the fallacy of Mr. Kelly's claim that he thought he took a pool cue out of the trunk and handed it to Torrid Smith suggesting that the witnesses must have ob-

---

1. Apparently the state originally intended to have the witness physically compare a pool cue and the shotgun in open court. The trial court, however, sustained an objection to the use of a pool cue to demonstrate the fallacy of Mr. Kelly's claim that witnesses had mistaken a pool cue he was carrying the morning of July 31, 1991, for a shotgun. The court stated that pool cues were common and of varying sizes.

served the pool cue and not a shotgun. The state did not use the shotgun to so demonstrate the comparative size, appearance and weights of the demonstration shotgun and pool cues because the trial court did not allow the prosecutor to use a pool cue. The absence of the comparison does not affect the admissibility of the shotgun.

The jury was not mislead nor was Mr. Kelly prejudiced by the exhibition of a shotgun unconnected with the crime. The jury was instructed that the shotgun exhibited was not the murder weapon, and the demonstration shotgun had some relevant probative value.

Point one is denied.

## II

■ As point two on appeal, Mr. Kelly asserts the trial court erred in overruling Mr. Kelly's motion to exclude reference to or admission into evidence of a spent shotgun shell recovered two days after the shooting in some bushes seventeen blocks from the crime scene. The shotgun shell in question was recovered on a vacant lot owned by Mr. Kelly's father and searched after receiving permission from the owner. The vacant lot is adjacent to the house where Mr. Kelly then lived with his parents.

Expert testimony established that a shotgun killed the victim. No shotgun shell was recovered at the crime scene. Wadding, lead pellet fragments and one complete pellet were recovered. The expert testified the one complete pellet was a number 8 lead pellet and the wadding was "12 gauge fiber shot wads." The spent shell found in the field was a 12 gauge shotgun shell imprinted with an "8" indicating the shell had been loaded with number 8 lead pellets when it was originally manufactured. The recovered shotgun shell had a "tool mark" on it the expert testified could have been caused by someone prying it out of a shotgun after it became jammed.

2. The expert testified that number 6 load is the most common.

3. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The admissibility of evidence is subject to the trial court's discretion, and relevance is the main criterion by which a trial court must evaluate the admissibility of evidence. *State v. Berry*, 609 S.W.2d 948, 954 (Mo. banc 1980). Evidence is relevant if it logically tends to establish a fact at issue, *Id.* or corroborates relevant evidence which bears on a principle issue. *State v. Richardson*, 838 S.W.2d 122, 124 (Mo.App.1992). Evidence is not irrelevant unless it is determined to be so without any doubt. *State v. Ramsey*, 820 S.W.2d 663, 667 (Mo.App.1991).

The recovered shotgun shell was consistent with the physical evidence recovered at the murder scene. It was recovered near appellant's home two days after the murder. The shell was relevant and not so prejudicial that its admission was a clear abuse of discretion. The jury was presented with the facts surrounding the discovery of the spent shell, the relative location of Mr. Kelly's home to the shell when discovered, and the time that passed after the murder and before the shell was discovered. The jury also heard expert testimony that a 12 gauge shotgun is the most common type of shotgun, a number 8 load is a common load for shotguns,[2] and a shell can be reloaded with any type of load. The expert admitted the shell could have been fired from any number of 12 gauge shotguns, and he could not say with any certainty that it came from any particular 12 gauge shotgun. The jury could properly weigh the significance of the spent shotgun shell when considering all the evidence presented.

The trial court did not abuse its discretion admitting the spent shotgun shell into evidence. `Point two is denied.

## III

■ Mr. Kelly, as his third point on appeal, seeks extension of *Batson*[3] to preclude a prosecutor from using preemptory challenges to strike members of the venire in their early twenties[4] without first offering age-neutral explanations.

4. Mr. Kelly was 18 years old at the time.

■ *Batson* has been enlarged to require neutral explanations for preemptory challenges of persons of one gender in addition to challenges based on race. *J.E.B. v. Alabama ex rel. T.B.*, — U.S. ——, ——, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89 (1994). Currently prosecutors are not required to state age-neutral explanations for preemptory challenges. Point three is denied.

### IV

■ As his fourth point on appeal, Mr. Kelly claims the trial court erred when it instructed the jury using jury instructions patterned after MAI–CR 3d 302.04 and MAI–CR 3d 300.02 which define reasonable doubt. Mr. Kelly argues that the given definition of reasonable doubt allowed the jury to find him guilty based on a degree of proof below that required by the due process clause. The definition of reasonable doubt contained in MAI–CR 3d 300.02 and 302.04 has been examined by the Missouri Supreme Court and found constitutionally sound. *State v. Ervin,* 835 S.W.2d 905, 924 (Mo. banc 1992) *cert. denied,* — U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). Point four is denied.

### V

■ As his fifth point on appeal, Mr. Kelly avers the motion court erred in denying his postconviction relief motion without an evidentiary hearing pursuant to Rule 29.15. Mr. Kelly claims his trial counsel was ineffective in failing to present at trial a witness, Torrid Smith's brother Zachery Smith, whom, Mr. Kelly claims, would have testified that Mr. Kelly was not in the house when Wayne Fuller was shot.

■ A convicted defendant's claim that counsel's assistance was so ineffective so as to require a reversal has two components. First, the defendant must show that the counsel's performance was deficient—that it fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064–65, 80 L.Ed.2d 674 (1984). Second, the convicted defendant must show the deficient performance prejudiced his defense and a reasonable probability exists that but for counsel's

errors the result of the trial would have been different. *Id.* at 694, 104 S.Ct. at 2068. Ordinarily the choice of witnesses is a matter of trial strategy and will not support a claim of ineffective assistance of counsel. *State v. Meadows,* 785 S.W.2d 635, 643 (Mo.App. 1990). To show ineffectiveness of counsel in not calling a witness, a movant must prove that the witness could have been located through reasonable investigation, the witness would have testified, and the testimony of the witness would have provided a viable defense. *Id.*

The motion court had before it the transcript of Mr. Zachery Smith's police statement when it considered Mr. Kelly's 29.15 motion. The state concedes that the transcript constituted hearsay but cites *State v. Wallace,* 825 S.W.2d 626, 632 (Mo.App.1992), as authority that hearsay presented without objection may be considered by the court.

The transcript indicates that Zachery Smith was asleep in the back seat of Mr. Kelly's car the night Wayne Fuller was killed. Zachery Smith testified he was drunk on Cisco wine. His statement indicates he awakened shortly before the shooting, could not see Mr. Kelly or Torrid Smith, discovered the car's engine was running and noticed a lady in a car watching him. Zachery Smith's statement disclosed that he drove the vehicle down the street to a position in front of the house where Wayne Fuller was shot and honked the horn to determine if his brother and Mr. Kelly were inside. He then heard a shot, and he quickly drove away. Zachery Smith's statement reported that he did not see anybody run away from the house because he did not remain after the shot.

Mr. Kelly did not establish that putting Zachery Smith on the stand could have provided him a viable defense. The statement reflects that Zachery Smith's testimony may have hurt Mr. Kelly's defense more than it would have helped. Choosing not to call Zachery Smith as a witness was sound trial strategy and as such is virtually unchallengeable. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Mr. Kelly's counsel did not provide ineffective assistance of counsel by failing to call Zachery Smith. The motion court did

not err by overruling Mr. Kelly's 29.15 motion without an evidentiary hearing. Point five is denied.

The judgment of conviction is affirmed, and the order denying Mr. Kelly's rule 29.15 postconviction motion without an evidentiary hearing is affirmed.

All concur.