STATE of Missouri,
Plaintiff–Respondent,

v.

Michael HUNTER, Defendant–Appellant.

No. 53038.

Missouri Court of Appeals,
Eastern District,
Division Three.

June 28, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 3, 1988.

Application to Transfer Denied Sept. 13, 1988.

Mary C. McWilliams, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Christopher M. Kehr, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KELLY, Judge.

Michael Hunter appeals from the judgment entered by the trial court after a jury found him guilty of second degree murder

in violation of § 565.021 RSMo 1986, armed criminal action in violation of § 571.015 RSMo 1986, and unlawful use of a weapon (carrying a concealed weapon) in violation of § 571.030.1(1) RSMo 1986. Finding appellant to be a prior offender, the trial court sentenced him to imprisonment for concurrent terms of life, ten years and five years. We affirm.

Appellant does not challenge the sufficiency of the evidence, so we need only briefly recapitulate the facts. Appellant was married to Debra Moore but they were separated. In June 1986 Ms. Moore and her boyfriend Jimmy Price, the victim, had been living together for over a year. Victim and Ms. Moore had been having problems and on Thursday, June 5, 1986, they also separated. Appellant helped Mr. Price move out of Ms. Moore's apartment and drove him to the home of Mr. Price's parents that Thursday. Appellant then visited Ms. Moore for the next four days. On Friday he came by after he had purchased groceries for Ms. Moore and her three children. He visited again on Saturday and Sunday, June 7 and 8. During these visits, he talked about getting back together but Ms. Moore explained that was not possible.

On Sunday, Ms. Moore called Mr. Price and asked him to dinner to discuss a reconciliation. Appellant had also visited Ms. Moore's apartment Sunday but left shortly after dinner that evening. Mr. Price missed dinner, eventually arriving much later that night, around eleven p.m. Mr. Price and Ms. Moore talked and then went to bed.

At about 3:30 p.m. on Monday, June 9, appellant knocked at Ms. Moore's door but she told him she had company. Mr. Price was still there. Appellant left but returned a half hour later, and walked in the house uninvited. He found Mr. Price and Ms. Moore in the bedroom watching television.

Angry, appellant told Ms. Moore they had been separated long enough and he wanted to reunite with his family and her. Appellant paced back and forth and asked why Ms. Moore and Mr. Price were getting back together. Appellant and Ms. Moore, both arguing, went into the kitchen. Mr. Price crossed the hall from the bedroom and stood silently by the kitchen doorway, but did not enter. Appellant pulled out a gun hidden in his trousers and shot Mr. Price. Appellant continued yelling at Ms. Moore. Her fifteen-year old son, who had heard the gunshot, ran to the kitchen, and saw Mr. Price lying on the hallway floor and appellant pointing the gun at Ms. Moore's face. Ms. Moore's son told appellant to leave her alone. Appellant walked over to Mr. Price and again pointed the gun at him. Ms. Moore pushed the gun away from Mr. Price's direction and ran towards the front door. Her son ran upstairs.

Appellant left the scene. Mr. Price subsequently died from the single bullet wound to the head. Appellant turned himself into the police later that day and made an audio-taped confession admitting he had shot Mr. Price, but that he had done so in self-defense.

Appellant raises two points on appeal. He attacks the failure of the trial court to strike a certain juror for cause and to instruct on sudden passion or on voluntary manslaughter. We address each in turn.

■ Appellant's first point contends the trial court erred in denying his motion to strike for cause venireperson Barbara Bunning. He argues that she expressed an inability to consider the evidence fairly and impartially because of her involvement in a previous murder trial and certain emotional problems in her personal life following her husband's death a year earlier. Appellant concludes that the failure to excuse venireperson Bunning was reversible error because he was denied his right to a full panel of qualified jurors from which to exercise his peremptory challenges. Appellant eventually used one of his peremptory strikes to remove her from the jury panel. The state responds that Mrs. Bunning unequivocally indicated her ability and willingness to hear the evidence fairly and impartially and that her personal reasons presented no impediment to her ability. We agree.

■ We have reviewed the entire voir dire between Mrs. Bunning, the attorneys

and the trial court. The qualifications of a prospective juror are not determined conclusively by a single response but are made on the basis of the entire examination. *State v. Murray*, 744 S.W.2d 762, 769[5] (Mo. banc 1988); *State v. Smith*, 649 S.W.2d 417, 425–26[12] (Mo. banc), *cert. denied* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983).

The initial reason given by Mrs. Bunning for not wanting to sit as a juror was "personal" in that she expressed reservations about her ability to "keep [her] emotions out of it". She stated that she suffered emotional trauma after having sat as a juror on a previous murder trial four or five years earlier. Appellant sought to strike her for cause. The court overruled the motion, stating he believed she was trying to avoid jury duty. Appellant requested the trial court individually question Mrs. Bunning at the bench. When asked by the court whether she could listen to the evidence and give both sides a fair trial, venireperson Bunning answered as follows:

I don't know that my emotions would enter into it. At this time my husband died at roughly the same time that this ʄ il occurred. And when I heard that I kind of got a jolt. I have been attending school until about three weeks ago trying to find a job. I'm right in the middle of that at the time this came up, plus the fact I just got out of seeing a psychologist about three weeks ago for trying to deal with my husband's death. I remember almost too well the last trial that I was on. I had emotional problems at that time with the trial itself. My life itself is going very evenly. And it was just the fact of hearing evidence of a man being killed and other evidence that was given, and I remember too much of it. And I don't know that I can go through it again at this time without literally falling apart. And I don't feel that's fair to either one of them.

The judge explained that nobody served as a juror by choice; Mrs. Bunning responded she realized that. The judge replied that no one enjoys sitting as a juror and that, to a certain degree, the experience is "a traumatic event for every juror".

After concluding that her trauma in dealing with the crime at trial was no different than anybody else's, he overruled the motion to strike for cause.

When initially questioned by the circuit attorney, venireperson Bunning never expressed any doubt that she could be fair and impartial. She affirmed her ability to hold the state to its burden of proof beyond a reasonable doubt. She tacitly agreed with appellant's questions that she would be bound only by the evidence at trial and not influenced by outside feelings or things other than the evidence; that she would follow the instructions setting out the law; and that she would pay full attention to the trial and not let her mind wander.

■ While trial court refusal to sustain a valid challenge for cause constitutes reversible error, it is well established that the trial court has wide discretion in determining the qualifications of a venireperson, and its decision will not be disturbed absent a clear abuse of discretion and real probability of injury to the complaining party. *Smith*, 649 S.W.2d at 422[4, 5]; *see also State v. Bebermeyer*, 743 S.W.2d 516, 519[1, 2] (Mo.App.1987). The appellate court must judge each case on its own particular facts. *Bebermeyer*, 743 S.W.2d at 519. A determination by the trial judge of the qualifications of a prospective juror necessarily involves a judgment based on observation of his demeanor and, considering that observation, an evaluation and interpretation of the answers in determining whether the venireperson would be fair and impartial if chosen as a juror. *Smith*, 649 S.W.2d at 422[6]. The trial judge is better positioned to make that determination than we are from the cold record; therefore, doubts about the trial court's findings are resolved in its favor. *Id.* [7]; *See State v. Johnson*, 744 S.W.2d 868, 870[2] (Mo.App. 1988).

From our careful review of the record of the questions asked venireperson Bunning by the circuit attorney, appellant's attorney, and the trial court and her responses to each, we conclude the trial court's decision not to strike her for cause was not a

clear abuse of discretion. Appellant's first point is denied.

■ Appellant's second point claims the trial court erred in refusing to instruct the jury on the defense of sudden passion arising from adequate cause on the charge of second degree murder and in refusing to instruct the jury on voluntary manslaughter. Appellant's requested instruction as the verdict director on second degree murder based on MAI–CR3d 313.04 provided as follows:

As to Count I, if you do not find the defendant guilty of murder in the first degree, you must consider whether he is guilty of murder in the second degree under this instruction.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 9, 1986, in the City of St. Louis, State of Missouri, the defendant caused the death of Jimmie Price by shooting him, and

Second, that it was the defendant's purpose to cause serious physical injury to Jimmie Price, and

Third, that defendant did not do so under the influence of sudden passion arising from adequate cause,

then you will find the defendant guilty under Count I of murder in the second degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of murder in the second degree.

As used in this instruction, the term "sudden passion" means passion directly caused by and arising out of provocation by Jimmy Price or another acting with Jimmy Price which passion arose at the time of the offense. The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

If you do find the defendant guilty of Count I of murder in the second degree, you will return a verdict finding him guilty of murder in the second degree.

Appellant also challenges the trial court's failure to give a voluntary manslaughter instruction. The instruction is not contained within the record. Appellant asserts, and the state does not dispute, that the instruction is not part of the record through inadvertence of the trial court. The record reflects that appellant's trial counsel requested such an instruction during the instruction conference. The proposed instruction apparently tracked the patterned instruction on voluntary manslaughter MAI–CR3d 313.08.

Notes on Use 3 of MAI–CR3d 313.08 states: "Generally, voluntary manslaughter under this instruction will be submitted only as a lesser included offense of murder in the second degree—conventional as submitted under MAI–CR3d 313.04. To justify such a submission, evidence of sudden passion arising from adequate cause must have been introduced."

Section 556.046 RSMo 1986 provides that the trial court is not obligated to charge the jury on a lesser included offense unless the evidence establishes some basis for a verdict acquitting a defendant on the offense charged and convicting a defendant of the lesser included offense. *State v. Lett*, 715 S.W.2d 557, 560 (Mo.App.1986).

■ To classify an intentional homicide as voluntary manslaughter requires evidence of sudden provocation which renders the mind of the appellant incapable of reflection and obscures his capacity to reason to such an extent demonstrating an absence of malice and of premeditation, the elements of second degree murder. *Id.* at 560[4].

■ Appellant did not testify at trial; however, the state introduced his taped statement into evidence. Appellant stated he carried a gun with him when he returned to his estranged wife's home be-

cause he "had a feeling that something was wrong. And Uh–Uh, I carried this pistol for me for protection." He entered the house uninvited and unannounced. His wife and he began to argue. In the tape he further stated as follows:

> And then, uh, we was in the kitchen talkin', then she got to cursin' me and she grabbed my shirt and when she grabbed my shirt he came runnin' in the room. I didn't know what he had. Seemed like he had somethin' in his hand. And I stood back and—and pulled the pistol out and shot him. And that's what happened. I'm just protectin' myself. This is a pretty big guy, you know. Ain't never had no problems until today.

The evidence showed that victim was in fact, "a pretty big guy", weighing about three hundred pounds. The victim's size alone provides no basis to attribute appellant's shooting of him as the result of sudden passion arising from adequate cause. Sudden passion means passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation. § 565.002(7) RSMo 1986. Adequate cause means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control. § 565.002(1) RSMo 1986. The defendant bears the burden to inject the issue of sudden passion arising from adequate cause. § 565.060.2 RSMo 1986.

Appellant's taped statement contains nothing to indicate that Mr. Price did anything to antagonize or provoke appellant that would "reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control". Nothing in this evidence suggests appellant shot victim because of sudden provocation capable of obscuring reason or rendering his mind incapable of reflection.

While the evidence here showed some basis for acquittal on the charged offense of second degree murder, that basis, self-defense, was presented to the jury with a self-defense instruction. The jury rejected the claim of self-defense. That same evidence, while justifying the instruction on self-defense, provides no basis for convicting appellant on the lesser-included offense of voluntary manslaughter. The trial court did not err in failing to instruct on the lesser included offense of manslaughter.

Had manslaughter been submitted to the jury as an instruction, appellant's proffered instruction on second degree murder which informs the jury in paragraph three of the difference between manslaughter and second degree murder would have been proper. Here, however, since no evidence supported the manslaughter instruction, the trial court did not err in not giving appellant's suggested murder second instruction.

Finding both of appellant's points lacking in merit, we affirm the judgment of the trial court.

KAROHL, P.J., and SMITH, J., concur.