**STATE of Missouri, Respondent,**

v.

**Willie James LUCKETT, Jr., Appellant.**

**No. 54320.**

Missouri Court of Appeals,
Eastern District,
Division Two.

April 11, 1989.

Application to Transfer Denied
June 13, 1989.

Colleen Dolan, St. Louis, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Presiding Judge.

In this jury-tried case, defendant appeals his conviction of first degree murder, a class A felony, in violation of § 565.020.1, RSMo 1986. Defendant was sentenced to imprisonment for life without probation or parole. We affirm.

Defendant raises ten points of error. First, the trial court erred in denying defendant's motion to set aside the verdict and his motion for new trial, because the State discriminated in peremptorily striking black venirepersons. We disagree, because the trial court's finding that the State articulated neutral explanations for each of its challenged strikes is not clearly erroneous. Second, the trial court erred in failing to conduct individual, sequestered voir dire of the venire. We disagree, because such an examination is discretionary and the trial court did not abuse its discretion. Third, the trial court erred in denying defendant's motion to quash the first degree murder charge, because the trial court lacked jurisdiction to try defendant on this charge. We disagree, because the trial court had jurisdiction under § 565.001.4(3), RSMo 1986.

Fourth, the trial court erred in admitting mugshots of defendant into evidence, allowing them to be passed to the jury, and allowing them to be taken to the jury room.

Fifth, the trial court erred in overruling defendant's motion in limine and in admitting "gruesome" photographs of the victim. Sixth, the trial court abused its discretion in allowing the photographs to be taken into the jury room. As to points four, five, and six, we disagree, because we find no abuse of discretion.

Seventh, the trial court erred in admitting a videotape of defendant's confession into evidence, allowing transcribed excerpts of the confession to be passed to the jury, and allowing that transcript to be taken to the jury room. We disagree. As to the admissibility of the confession, defendant did not preserve his objection based on coercion, duress, and unlawful arrest. Concerning the transcript, the trial court did not abuse its discretion in allowing the jurors to have the transcript while viewing the videotape, and, under the circumstances of this case, allowing the jury to have the transcript in the jury room did not prejudice defendant. Eighth, the trial court erred in allowing a State's witness to testify about defendant's "involvement in a crime not being tried in this case." We disagree, because the evidence was relevant to show motive.

Ninth, the trial court erred in denying defendant's motion for separate juries for the guilt and punishment phases of the trial. We disagree, because separate juries are not authorized. Tenth, the trial court erred in overruling defendant's motion to dismiss the indictment. We disagree, because the indictment properly charged defendant as an accessory.

The evidence showed that the victim, Marilyn Wilkins, and defendant worked at Cristo's, a restaurant in the City of St. Louis. Defendant was fired when the victim reported that he was stealing from the restaurant.

Thereafter, defendant and a friend, Bruce Kilgore, made plans to rob the victim. On August 27, 1986, defendant and Kilgore went to Cristo's and waited for the victim to leave work. When she came onto the parking lot, the two men abducted her and forced her into a car. Defendant held

the victim down and Kilgore drove toward Kinloch.

The two men were wearing stocking masks; however, the victim recognized defendant and called his name. Kilgore stopped the car on a dead-end street in a secluded area of Kinloch. While defendant held the victim, Kilgore reached back and removed her rings.

Kilgore told defendant that the victim would have to die since she knew defendant's identity. Kilgore handed defendant a pocket knife. Defendant said, "No. You have to do that." Kilgore pulled the victim out of the car, punched her in the face, and threw her on the ground. When Kilgore told defendant to hold her, defendant said, "Man, go ahead and do what you gotta do." Kilgore stabbed the victim's chest until the knife folded up; then Kilgore cut her throat.

Defendant and Kilgore left the victim's body there, and went to the Continental Manufacturing plant in Hazelwood. There, Kilgore broke the knife and threw it in the weeds.

The following day, defendant and Kilgore agreed that the body was too close to defendant's house. Together, they moved the body to Forest Park, where it was later found.

■ In his first point, defendant contends that the trial court erred in denying his motion for new trial, because the State purposefully discriminated in striking blacks from the jury. The State used nine of its ten peremptory strikes against black venirepersons. On appeal defendant challenges the State's motive for making four of those strikes.

At a hearing held on this issue, the prosecutor explained his reasons for striking the black venirepersons. Defendant asserts that these reasons were pretextual and unsubstantiated by the record. The trial court found that the prosecutor's reasons were set forth "with sufficient particularity." Further it found that the State's reasons were "other than purely exercising the challenge on the basis of race."

We may not set aside the trial court's findings unless they are clearly erroneous, and due regard shall be given to the trial court's opportunity to judge the credibility of witnesses. *State v. Antwine,* 743 S.W. 2d 51, 66 (Mo.banc 1987). " '[A] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Id.* (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511 84 L.Ed.2d 518, 528 (1985)). Here, the record substantiates the State's articulated reasons for making its strikes. Thus, the trial court's findings are not clearly erroneous.

Defendant also argues that the State did not strike similarly situated whites. However, as the State pointed out in its brief, the record does not support this argument. The trial court's findings are not clearly erroneous; accordingly the first point is denied.

■ Defendant next alleges that the trial court erred in failing to conduct individual and sequestered voir dire.

Initially, those venirepersons who indicated they had a legitimate excuse for not serving were individually examined at the bench. Thereafter, the trial court divided the remaining panel into three groups, and voir dire was conducted in these smaller groups of 16 or 18. " 'This procedure was within the trial court's discretion,' " *State v. Leisure,* 749 S.W.2d 366, 376 (Mo.banc 1988) (quoting *State v. Guinan,* 665 S.W. 2d 325, 329 (Mo.banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984)), and we find no abuse of that discretion. Point denied.

■ Defendant's third point alleges that the trial court erred in denying his motion to quash the first degree murder count. Defendant argues that the trial court lacked jurisdiction to try him on this charge, because "the crime involved was committed entirely in St. Louis County."

The original indictment alleged that the killing had occurred in St. Louis County, and the City of St. Louis had jurisdiction

pursuant to § 541.033, RSMo 1986. The State later filed a substitute information in lieu of indictment which asserted that §§ 541.033 and 565.001.4, RSMo 1986, conferred jurisdiction on the trial court.

Section 565.001.4 provides that persons accused of committing a homicide offense shall be prosecuted:

   \*    \*    \*    \*    \*    \*

(3) In the county in which the body of the deceased victim is found.

"County," as it is used in § 565.001, includes the City of St. Louis. § 1.080, RSMo 1986.

Defendant's motion to quash did not allege that § 565.001.4 is unconstitutional. Rather, it submitted that since all elements of the crime occurred in St. Louis County, the City of St. Louis did not have jurisdiction. To the extent this argument is true, however, it ignores § 565.001.4(3). Since the victim's body was found in the City of St. Louis, the trial court had jurisdiction, pursuant to § 565.001.4(3), to try defendant for first degree murder. Therefore, the trial court did not err in denying defendant's motion to quash. Defendant's third point is denied.

■ In his fourth point, defendant claims that the trial court erred in admitting mugshots into evidence, allowing them to be passed to the jury, and allowing them to be taken to the jury room. Defendant contends that "these procedures were unduly suggestive because they implicated [him] in other crimes unrelated to this cause."

Prior to trial, a State's witness identified defendant from four mugshots as the man who was with Kilgore at the Continental Manufacturing plant on the night of the murder. At trial, this witness viewed the mugshots again and made an in-court identification of defendant. At the conclusion of the State's case, the mugshots were passed to the jury.

This court has previously held that mugshots "may be admitted and then viewed by the jury when all identifying information is masked, the defendant's identity is in issue and they will help the jury determine the accuracy of the identification." *State v. Moore*, 726 S.W.2d 410, 413 (Mo.App.E.D. 1987).

Here, the four mugshots were admitted into evidence after the trial court noted that "all areas of name and date" were "covered." Further, defendant's identity was in issue at the time the mugshots were admitted and passed to the jury. Although at the bench, defendant offered to stipulate that he was the man the witness had seen on that night, no stipulation was made. In addition, although defendant admitted in his opening statement that he was with Kilgore at the Continental plant on the night of the murder, his opening statement was not given until the State's case was concluded. Thus, under *Moore*, the trial court did not err in admitting the mugshots or allowing them to be passed to the jury.

In his brief, defendant suggests that the identifying information on the mugshots had been masked with tape. He asserts that the trial court abused its discretion in allowing the mugshots to be taken to the jury room because the jurors could have removed the tape.

The mugshots have not been presented to us. Further, defendant does not contend that the jurors did, in fact, remove or loosen the tape. Since defendant's argument is based on pure speculation, he has failed to establish error.

Defendant also argues under his fourth point that the State's use of the mugshots during the in-court identification procedure was unduly suggestive. This issue was not raised at trial or in defendant's new trial motion. Thus, the issue was not preserved for our review. Defendant's fourth point is denied.

■ Defendant's fifth point alleges that the trial court erred in admitting three "gruesome" photographs of the victim into evidence. He contends that the photographs were cumulative and prejudicial, and their sole purpose was to inflame the jury.

■ It is well-settled that "[t]rial courts have broad discretion in the admission of photographs." *State v. Murray*, 744 S.W.

2d 762, 772 (Mo.banc 1988). *State v. Chew,* 740 S.W.2d 715, 717 (Mo.App.E.D.1987). It is also well-settled that "[a] photograph is admissible if it accurately depicts the scene and tends to prove any elements of the charged offense, including issues of identity, *condition and location of the body, nature and location of wounds,* and *the cause of death."* *State v. Evans,* 639 S.W. 2d 820, 822 (Mo.Div. 2 1982) (Emphasis added); *State v. Schneider,* 736 S.W.2d 392, 403 (Mo.banc 1987).

One photograph, which shows the location and condition of the body when it was found, corroborates the testimony of the witness who found the body. A second photograph depicts the location and nature of the wound to the victim's neck. Defense wounds on the victim's right hand are shown in a third photograph. These latter two photographs were used by the deputy medical examiner during his testimony, and "provided a pictorial reference" for his explanation of the victim's cause of death and the nature of her wounds. *Schneider* at 403.

Although defendant describes the photographs as "gruesome," they accurately depict the wounds inflicted on the victim and the condition of the body. "If the photographs are gruesome and shocking it is because the crime itself was of that nature." *Chew* at 717. We find no abuse of discretion in the admission of the challenged photographs. Point denied.

In his sixth point, defendant alleges that the trial court abused its discretion in allowing the jury to take the three photographs of the victim to the jury room. Defendant sets forth the same argument presented in his previous point.

■ "The decision whether to allow exhibits to be taken to the jury room is a matter of discretion for the trial judge." *State v. Williams,* 643 S.W.2d 3, 4 (Mo. App.E.D.1982). We find no abuse of that discretion; therefore, defendant's sixth point is denied.

Defendant alleges in his seventh point that the trial court erred in admitting defendant's videotaped confession into evidence. Defendant argues that his arrest was unlawful because St. Louis City Police officers arrested him outside their jurisdiction. He also contends that the confession was a product of coercion and duress.

■ In his motion to suppress and his objections at trial to the introduction of the confession, defendant asserted only that the arrest was made "without authority" and the confession "was obtained in violation of constitutional rights." These general assertions alone did not sufficiently present the issue of the officers' jurisdiction to the trial court. Since this issue was raised with specificity for the first time in defendant's new trial motion, it was not preserved for our review.

■ Moreover, we are unable to review defendant's contention that the confession was a product of an unlawful arrest, coercion, and duress, because we were not provided with a transcript of the motion to suppress hearing. In failing to provide that transcript, defendant has failed to meet his burden of demonstrating error. *State v. Charron,* 743 S.W.2d 436, 437 (Mo.App.E.D.1987); Rule 30.04(a) and (c).

Under this point, defendant also alleges that the trial court erred in allowing transcribed excerpts of his confession to be passed to the jury and sent to the jury room.

■ The videotape has not been filed with this court. However, the record indicates that the tape's quality is poor. If portions of a tape are inaudible "it may be appropriate, in the sound discretion of the trial judge, to furnish jurors with copies of a transcript to assist them in listening to the [tape]." *U.S. v. McMillan,* 508 F.2d 101, 105 (8th Cir.1974); *State v. Engleman,* 653 S.W.2d 198, 200 (Mo.Div. 1 1983); *State v. Montgomery,* 590 S.W.2d 105, 108 (Mo.App.E.D.1979). Under the circumstances presented here, we find no abuse of discretion in allowing the State to give the transcripts to the jurors, to follow as they viewed the tape.

■ "Transcripts should not ordinarily be admitted into evidence unless both sides stipulate to their accuracy and

agree to their use as evidence." *McMillan, supra* at 106; *Montgomery, supra* at 108. Here, there was no such agreement. The transcript was not received into evidence and, thus, it should not have been sent to the jury room.

Nevertheless, as in *Montgomery*, we find no prejudice. When the jury requested the transcript during its deliberations, defendant objected. Defendant acknowledged the accuracy of the transcripts; however, he argued that instead of sending the transcript, the court should show the videotape to the jury again. Since defendant apparently had no objection to the jury watching the videotape at this point, and since he acknowledged the transcript's accuracy, defendant was not prejudiced by sending the transcript to the jury room.

Moreover, on direct examination, defendant detailed his involvement with Kilgore in the murder. This testimony is consistent with the transcribed excerpts of his taped confession. The verdict director instructed the jury to find defendant guilty of first degree murder if they found and believed that, *inter alia*, defendant aided or encouraged Kilgore in causing the victim's death. Thus, we find no prejudice; defendant's seventh point is denied.

■ Defendant's eighth point alleges that the trial court erred in allowing a State's witness to testify regarding defendant's "involvement in a crime not being tried in this case."

Evidence of other crimes is admissible where it tends to establish motive. *State v. Trimble*, 638 S.W.2d 726, 732 (Mo.banc 1982). A State's witness testified that on the day following the murder, defendant and Kilgore showed him some jewelry which belonged to a woman defendant used to work with. Defendant told him that Kilgore had killed the woman by cutting her throat. This evidence was relevant to establish defendant's motive for murdering the victim.

Defendant argues that the probative value of the evidence was outweighed by its prejudicial effect. "[T]he question of whether the prejudicial effect of evidence outweighs its probative value rests within the sound discretion of the trial court." *Id.* We find no abuse of discretion in admitting the evidence. Defendant's eighth point is denied.

■ In his ninth point defendant alleges that the trial court erred in denying his motion for separate juries. In his motion, defendant asked the trial court to order two juries to hear this particular cause. One would decide only the question of guilt and would not be "death qualified." If the first jury found him guilty, the other jury would be "death qualified" and would determine the punishment.

A trial using two such juries is not authorized in Missouri. Where first degree murder is submitted "to the trier without a waiver of the death penalty, the trial shall proceed in two stages before the same trier." § 565.030.2, RSMo 1986. *State v. Guinan*, 732 S.W.2d 174, 176 (Mo.banc 1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 308, 98 L.Ed.2d 266 (1987).

In his final point, defendant asserts that the trial court erred in overruling his motion to dismiss. He argues that the indictment failed to inform him of the precise nature of the charge since it stated that defendant killed the victim, "when in fact the identity of the actual killer was known and he had been apprehended." Defendant has cited no authority to support this argument.

■ "An indictment may charge a defendant either as a principal or as an aider and encourager with the same legal effect." *State v. Newbold*, 731 S.W.2d 373, 385 (Mo.App.W.D.1987). Defendant's tenth point is denied.

The judgment is affirmed.

GARY M. GAERTNER and KAROHL, JJ., concur.