STATE of Missouri, Respondent,

v.

**Roger Dale MERCHANT, Appellant.**

**Roger Dale MERCHANT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 40104.**

Missouri Court of Appeals,
Western District.

May 15, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 3, 1990.

Application to Transfer Denied
July 31, 1990.

Susan L. Hogan, Columbia, for appellant.

William Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

Roger Merchant appeals his conviction for murder in the first degree, Section 565.-020, RSMo 1986, and murder in the second degree, Section 565.021, RSMo 1986, for which he was sentenced to concurrent sentences of life imprisonment with no possibility of probation or parole and imprisonment for 30 years. He claims instructional error and error in allowing prejudicial photographs of the victims' bodies. He also appeals the denial of his Rule 29.15 motion for postconviction relief. Both appeals have been consolidated.

Roger Merchant and Candice Merchant were married in December, 1976, bore two children, separated in December, 1985, and finally divorced in March, 1986. Candice moved to Kansas City while Roger stayed in the family home in Marshall. Roger had custody of the children during the school year, and Candice had custody during the summer months.

In December, 1986, Candice and her boyfriend, Doyle Bliel, returned to Marshall for the Christmas holidays. Candice's sister, Robin Klinge, had arranged to meet Roger and his children at church for Christmas Eve Mass. Robin was to take the children after Mass to her home for a Christmas party.

At approximately 7:20 p.m., Candice and Doyle left Robin's residence to pick up a typewriter from a friend. Robin and her children arrived at church at 7:30 p.m., Roger and his children arrived about ten minutes later. Roger then departed leaving his children with Robin.

At approximately 8:00 p.m., Jeanette Klinge, Robin's sister-in-law, was standing outside Robin's home when Roger's truck came around back and pulled into the driveway. He drove far enough up to see if any cars were parked behind the house and immediately backed out of the drive. Roger's truck then headed north on Salt Pond Street at a high rate of speed.

Also at about 8:00 p.m. Wayne Schlidmeier was washing his van at a car wash on the corner of Arrow Street and Salt Pond when he heard what sounded like shotgun blasts. He looked around the corner of the car wash and saw a car with its doors open and a flat-bed truck with "Merchant" written on the driver's side door in the parking lot of Fingland Glass. Schlidmeier saw a man walking from the back of the car toward the truck carrying what appeared to be a shotgun. Schildmeier ducked back into the wash bay and saw the truck head south on Salt Pond at a rapid pace. He looked out to the parking lot, saw someone lying motionless on the ground, then ran down the street to summon help.

Randall Kollmeyer was driving around the square at 8:00 p.m. While driving on Arrow Street, he heard what sounded like a

shotgun blast. Kollmeyer observed a flat-bed truck in Fingland Glass' parking lot, a second car parked in the lot, and a man walking from the car toward the truck carrying some type of long gun. He also saw a body lying on the ground near the driver's side of the car. Kollmeyer drove to the police station to inform them of the shooting.

Officer Walker arrived at the scene a few minutes after the shooting and pronounced Doyle dead. The defendant's ex-wife died shortly thereafter at the hospital emergency room. Her cause of death was extensive blood loss due to a massive gunshot wound to the left side of her neck. Doyle received three major wounds, one to the right side of the skull, one to the right side of the chest, and one to his right arm. The cause of death was attributed to the shotgun wound to his head.

Shortly after 8:00 p.m., Roger appeared at the Saline County Sheriff's Department and told Deputy Laughlin that he had been involved in a shooting. Roger was then taken to the Marshall Police Department where he·was advised of his rights and made the following statement: He stated he found Candice and Doyle at Fingland Glass and pulled in behind their car. He said he was having trouble remembering what happened next, but he did remember the shotgun going off in his hands.· He then got back into his truck and drove to Donald Durham's home. Roger told Durham he thought he had killed Candice and Doyle. Durham drove him to the Sheriff's Office to turn himself in.

Police searched Roger's truck and seized a Remington 870 pump action 12 gauge shotgun, one ten gauge single shot shotgun and some ten gauge shells. Officers noted the 12 gauge shotgun contained an expended cartridge along with one remaining live round in the magazine tube. It was also noted the shotgun was unplugged, allowing it to contain four rounds in the magazine. The 12 gauge shotgun was identified as the weapon used to shoot Candice and Doyle.

The jury found Roger guilty of murder in the first degree on Count I (Doyle) and guilty of murder in the second degree on Count II (Candice). Additional facts will be given *infra* as needed.

Merchant's first point on appeal contends trial court error in refusing his proffered instructions A, B, C, D and E on the lesser included offenses of second degree murder and voluntary manslaughter. He argues such instructions were supported by the evidence and should have been given, since the jury could have found that he did not act deliberately but acted under the influence of sudden passion, so that he was not guilty of first or second degree murder, but rather guilty of voluntary manslaughter.

The failure of the trial court to instruct on all lesser included offenses supported by the evidence is error. *State v. Westfall*, 710 S.W.2d 408, 409 (Mo.App.1986); *State v. Robinson*, 672 S.W.2d 743, 745 (Mo.App. 1984). However, the court is not "obligated to charge the jury with respect to an included offense unless there is a basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Section 556.046.2, RSMo 1986.

In the instant case, there is no such basis for convicting Merchant of voluntary manslaughter. To justify the submission of such an instruction, MAI–CR3rd 313.08, evidence of sudden passion arising from adequate cause must have been introduced. *Id.* Notes on Use 3. Sudden passion is defined as:

> passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation....

Section 565.002(7), RSMo 1986. Adequate cause is defined as:

> cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary persons capacity for self-control....

Section 565.002(1), RSMo 1986. Merchant has not shown he acted out of sudden

passion. Instead, the facts show he tracked down his two victims by first going to Robin's home, then finding them at Fingland Glass. The only evidence on this point was that on the way to church the defendant was told by one of the children they had not been fed because mother had been too busy "messing around with Doyle." Roger and Candice had had continuing problems following the divorce. A psychologist for the defense opined Merchant suffered from a brief reactive psychosis—"an isolated explosive disorder of impulse." Merchant could not remember what exactly happened other than the gun firing and seeing Candice on the ground. This evidence simply was not sufficient to have required the additional instructions. *See e.g., State v. Hunter,* 755 S.W.2d 634 (Mo. App.1988); *State v. Stribling,* 721 S.W.2d 48 (Mo.App.1986); *State v. Brookshire,* 368 S.W.2d 373 (Mo.1963); *State v. Wright,* 336 S.W.2d 714 (Mo.1960). Moreover, the mere injection of the defense of mental disease or defect does not meet the burden of showing sudden passion. It is a distinct and wholly separate defense having no relevancy on the manslaughter issue. *See Hunter, supra,* 755 S.W.2d at 638. The trial court did not err by failing to give a manslaughter instruction.

■ Nor did the trial court err by giving the state's version of MAI–CR3rd 313.04, the instruction on second degree murder. Had a manslaughter instruction been submitted to the jury, Merchant's "proffered instruction on second degree murder which informs the jury in paragraph three of the difference between manslaughter and second degree murder would have been proper." *Hunter, supra,* at 638. Here, however, since no evidence supported the manslaughter instruction, the trial court did not err by refusing to give Merchant's proffered second degree murder instruction. *Id.* Point one is denied.

■ Merchant's second point charges trial court error in admitting photographs depicting the condition of the victims in that they were cumulative, gruesome and unduly inflammatory. He claims that any probative value of the photographs was outweighed by their prejudicial effect.

A trial court has broad discretion in the admission of relevant photographs. *State v. Schneider,* 736 S.W.2d 392, 403 (Mo. banc 1987); *State v. Luckett,* 770 S.W.2d 399, 403 (Mo.App.1989). "A photograph is admissible if it accurately depicts the scene and tends to prove any elements of the charged offense, including issues of identity, *condition* and location *of the body, nature* and location *of the wounds,* and the cause of death." *State v. Evans,* 639 S.W.2d 820, 822 (Mo.1982) (emphasis added); *Schneider, supra,* 736 S.W.2d at 403; *Luckett, supra,* 770 S.W.2d at 404.

Merchant argues that since there was no dispute he shot the victims and they died from those wounds, the pictures only served to inflame the jury and did nothing to prove the real issue in the case—whether he suffered from a mental defect excluding his responsibility for the shooting or whether he was instead able to coolly deliberate before acting. The photographs at issue include a close-up of Doyle lying in a pool of blood beside the car. His brain is exposed and part of it is hanging down over what remains of his scalp. Candice is shown with her face and hair covered with blood. Her jaw and part of her neck are missing, and her teeth and internal organs are visible through the wound.

Although the deaths were admitted, nevertheless, under Missouri law the court is forced to defer to the trial court's discretion. *State v. Leisure,* 772 S.W.2d 674, 682 (Mo.App.1989). The fact that Merchant admitted to the killings and manner of death is inconsequential—"a photograph is not rendered inadmissible because other evidence may have described what is shown ... nor is the state precluded from introducing the photograph because the defendant expresses a willingness to stipulate to some of the issues involved." *Schneider, supra,* 736 S.W.2d at 403. *See also Leisure, supra,* 772 S.W.2d at 681; *State v. Sloan,* 756 S.W.2d 503, 509 (Mo. banc 1988). Merchant's argument that there were many state witnesses who testified to the details of the scene of the shooting,

thus obviating the need for further corroboration, is also without merit—"the fact that the photograph is cumulative of other evidence, makes no difference." *Leisure, supra,* 772 S.W.2d at 682; *State v. Giffin,* 640 S.W.2d 128, 132 (Mo.1982). Finally, even though Merchant describes the photographs as "gruesome," they accurately depict the wounds inflicted on the victims— "if the photographs are gruesome and shocking it is because the crime itself was of that nature." *Luckett, supra,* 770 S.W.2d at 404, quoting *State v. Chew,* 740 S.W.2d 715, 717 (Mo.App.1987). *See also Schneider, supra,* 736 S.W.2d at 403. The trial court did not abuse its discretion by admitting the photographs. Point two is denied.

Merchant's third and final point claims trial court error in denying his Rule 29.15 motion for postconviction relief. He claims his right to effective assistance of counsel was denied in that trial counsel failed to contact or call to testify four potential witnesses who could have testified to their observations of Merchant after his divorce, thereby supporting his defense of not guilty by reason of mental disease or defect.

Review of a denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. *Murray v. State,* 775 S.W.2d 89, 90 (Mo. banc 1989); *Childress v. State,* 778 S.W.2d 3, 5 (Mo. App.1989). Findings and conclusions are clearly erroneous only if after review of the entire record the court is left with a definite and firm impression that a mistake has been made. *Murray, supra,* 775 S.W.2d at 90; *Childress, supra,* 778 S.W.2d at 5. In order to prevail on a claim of ineffective assistance of counsel, a movant must establish that 1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and 2) he was thereby prejudiced. *Murray, supra,* 775 S.W.2d at 90; *Henderson v. State,* 770 S.W.2d 422, 423 (Mo.App.1989). The movant has the burden of proving his grounds for relief by a preponderance of the evidence. Rule 29.-15(h); *Childress, supra,* 778 S.W.2d at 5.

Merchant's defense was not prejudiced when trial counsel did not call the potential witnesses. The testimony which would have been elicited was cumulative to the testimony of Merchant and Dr. George Chance, Ph.D., who did testify at trial. "Failure to produce cumulative evidence does not constitute ineffective assistance of counsel." *Henderson, supra,* 770 S.W.2d at 423; *Johnson v. State,* 776 S.W.2d 456, 458 (Mo.App.1989). Moreover, an attorney's choice of witnesses, and in turn a decision not to call a witness, is a matter of trial strategy which is virtually unchallengable and will generally not support a finding of ineffective assistance of counsel. *Childress, supra,* 778 S.W.2d at 6; *Henderson, supra,* 770 S.W.2d at 423; *Johnson, supra,* 776 S.W.2d at 458. Point three is denied.

The judgment is affirmed.