**STATE of Missouri, Respondent,**

v.

**Joe BOYD, Appellant.**

**No. 65514.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 21, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 17, 1996.

Application to Transfer Denied
Feb. 20, 1996.

Mary Bruntrager Schroeder, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Traci J. Sanders, Assistant Attorney General, Jefferson City, for respondent.

## OPINION

SIMON, Judge.

Appellant, Joe Boyd, appeals from his sentences following a jury verdict of murder in the second degree, § 565.021, RSMo.1994 (all references shall be to RSMo.1994 unless otherwise indicated), assault in the first degree, § 565.050, and two counts of armed criminal action, § 571.015, in the Circuit Court of the City of St. Louis.

Appellant was sentenced to 45 years in prison; 30 years for murder in the second degree; 30 years total for the armed criminal action counts, to be served concurrently to the murder sentence; and 15 years for assault in the first degree to run consecutively with the other sentences.

On appeal, appellant contends that the trial court erred in: (1) refusing to instruct the jury on voluntary and involuntary manslaughter because there was sufficient evidence of provocation, sudden passion, and recklessness; (2) refusing to instruct the jury on assault in the second degree because there was sufficient evidence of sudden passion and insufficient evidence of a "serious

physical injury;" and (3) not granting his motion to dismiss counsel because of a conflict of interest with appellant.

Appellant does not challenge the sufficiency of the evidence. A brief summary of the facts follows. George Lathan and appellant were neighbors. On the night of June 28, 1993, Lathan invited some friends over for a barbecue. Later in the evening, Willie Taylor's son, Jason, went over to appellant's fence and began "banging" on the fence railing with a stick. Appellant came out of his house and brought Jason over to the area where Lathan and his friends were socializing. After appellant discovered who was Jason's father, an argument ensued between appellant and Taylor. Although it is unclear as to the extent of the physical confrontation that ensued, it is clear that appellant and Taylor began "shoving" each other. Finally, appellant left Lathan's yard and went back into his home. Taylor left the party and went to his car, which was parked in front of Lathan's home. Taylor testified that he was attempting to leave the party in order to give appellant time to "cool off." Taylor was seated in the car when appellant walked up with a gun and fired two shots at Taylor at close range. Taylor, who survived, was shot in the abdomen, but the bullet passed through his body. Taylor's son witnessed the shooting.

Lathan, who witnessed the shooting from his front porch, ran down to appellant and attempted to grab the gun. Lathan grabbed at appellant's hands and side in order to take the gun away and prevent appellant from firing at Taylor again. Appellant, turned and shot Lathan in the neck. Next, appellant ran down the street with the gun in his hand, entered his car and left the scene. Lathan died.

The jury found appellant guilty on all counts. Subsequently, appellant filed a motion for post-conviction relief, pursuant to Rule 29.15. Although the trial court conducted an evidentiary hearing and issued findings of fact and conclusions of law, it ultimately denied the motion as untimely. Appellant did not appeal the denial of his Rule 29.15 motion, therefore, it is abandoned.

In his first point, appellant contends that the trial court erred in refusing to instruct the jury on voluntary and involuntary manslaughter because there was sufficient evidence of provocation, sudden passion, and recklessness to support the submission of the lesser included offenses. The issue is whether the evidence failed to support an essential element of murder in the second degree and whether there was evidence that supported submission of voluntary or involuntary manslaughter. *State v. Mease,* 842 S.W.2d 98, 110–112 (Mo. banc 1993).

Appellant first argues that the trial court should have submitted his proffered instruction on voluntary manslaughter because there was sufficient evidence that he shot Lathan under the influence of sudden passion arising out of adequate cause.

Section 565.023 provides in pertinent part:

1. A person commits the crime of voluntary manslaughter if he:

> (1) Causes the death of another person under the circumstances that would constitute murder in the second degree under subdivision (1) of section 565.021, except that he caused the death under the influence of sudden passion arising from adequate cause ...

Specifically, appellant proffered Instruction No. B:

> As to Count I, if you do not find the defendant guilty of murder in the second degree, you must consider whether he is guilty of voluntary manslaughter.

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

>> First, that on June 28, 1992, in the City of St. Louis, State of Missouri, the defendant caused the death of George Lathan by shooting him, and

>> Second, that defendant knew or was aware that his conduct was practically certain to cause the death of George Lathan, then you will find the defendant guilty under Count I of voluntary manslaughter.

> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions,

you must find the defendant not guilty of voluntary manslaughter.

If you do find the defendant guilty under Count I of voluntary manslaughter, you will assess and declare the punishment at imprisonment for a term of years fixed by you, but not less than five years and not to exceed fifteen years.

Instruction No. 6, offered by the state and submitted to the jury is MAI–CR3d 313.04, murder-second degree conventional.

■■■ Acting under the influence of sudden passion arising from adequate cause, § 565.023.1(1), is a special negative defense to the crime of conventional second degree murder. *State v. Blackman*, 875 S.W.2d 122, 131[1–3] (Mo.App.E.D.1994). Appellant has the burden of injecting this issue. *Id.* If there is evidence that appellant shot Lathan under the influence of sudden passion arising from adequate cause, an instruction submitting conventional murder in the second degree must submit, as an element of the crime, a third paragraph that defendant did not do so under the influence of sudden passion arising from adequate cause. *Id.* Further, the trial court must also give MAI–CR3d 313.08 on voluntary manslaughter. *Id.;* Notes on Use, MAI–CR3d 313.04, note 4.

■■■ "Sudden passion" means "passion directly caused by and arising out of provocation by the victim which arises at the time of the offense and is not solely the result of former provocation." *Id.;* § 565.002(7). "Adequate cause" means "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self control." *Id.;* § 565.002(1). In *State v. Simmons*, 751 S.W.2d 85, 91 (Mo.App.1988), we stated that for "adequate cause" to exist:

> ... there must be a sudden, unexpected encounter or provocation tending to excite the passion beyond control. Passion may be rage or anger, or terror, but it must be so extreme that for the moment, the action is being directed by passion, not reason. R. Perkins, Criminal Law, 66 (1969).

As we further stated in *Simmons*, the offense must have been done in a sudden passion and not after there has been time for the passion to cool. *Id.*

In *Blackman*, the defendant who requested that the jury be instructed on sudden passion, claimed that the police officer shined a flashlight in his face, pushed his hand away when he tried to shield his eyes, called him a racial epithet, and fired a shot past his ear. *Blackman*, 875 S.W.2d at 131. The defendant stated that: "Next thing I know, I getting mad cause she just tried to shoot me." *Id.* We found that although defendant got mad, he did not describe "extreme rage, anger, or terror directing his actions beyond his control." Therefore the evidence was insufficient to establish sudden passion. *Id.*

■■■ Here, we are unable to discern, nor does appellant direct us to any evidence in the record to support the contention that appellant was acting out of sudden passion when he shot Lathan. Nowhere do we find any evidence appellant was experiencing "rage, anger, or terror directing his actions beyond his control." *Id.*

On appeal, appellant argues that Lathan grabbed him from behind and this was adequate cause for sudden passion. The record does not support this argument. In any event, that evidence would not constitute sufficient evidence of adequate cause. Further, there is no showing of "sudden passion." The trial court did not err in refusing to instruct the jury on voluntary manslaughter.

After first arguing at trial that he did not shoot Lathan, and then on appeal arguing that he was entitled to a voluntary manslaughter instruction based on sudden passion, appellant next contends that the trial court failed to submit an involuntary manslaughter instruction because he was reckless in shooting Lathan.

Section 565.024.1(1) provides that a person commits the offense of involuntary manslaughter if he "recklessly causes the death of another person." The term "recklessly" is defined in MAI–CR3d 313.10:

> In determining whether the defendant recklessly caused the death of [name of victim], you are instructed that a person

acts recklessly as to causing the death of another person when there is a substantial and unjustifiable risk he will cause death and he consciously disregards that risk, and such disregard is a gross deviation from what a reasonable person would do in the circumstances.

In *State v. Baldwin*, 808 S.W.2d 384, 393 (Mo.App.S.D.1991), the defendant testified that she got a loaded gun and took it to her room because she was alone and was afraid of the dark, when she returned "the gun just went off." *Id.* at 390. The Southern District upheld the conviction of second degree murder for killing her daughter when "the gun just went off." *Id.* at 385. The court held there was insufficient evidence to warrant a conviction for involuntary manslaughter where: there was no evidence whereby the defendant loaded or cocked the gun or that she was aware that the gun was loaded or cocked; no explanation for how it happened to be pointed at the child when it discharged; she did not testify that she aimed it at anyone or anything; no evidence that she was waving it around indiscriminately or otherwise handling it in conscious disregard of a substantial and unjustifiable risk or in any way made a gross deviation from what a reasonable person would do. *Id.*

■ Likewise here, viewing the evidence in a light most favorable to the appellant, it is insufficient to justify the submission of an involuntary manslaughter instruction. Even though appellant argues on appeal that he and Lathan were wrestling, the only evidence in the record points to the fact that appellant turned and fired the fatal shot at Lathan. Point denied.

In his second point, appellant contends that the trial court erred in refusing to submit an instruction on assault in the second degree "because there was evidence of sudden passion arising from adequate cause and the contrary evidence nature and severity of the injury justified the giving of the lessor included offense."

■ Trial courts are obligated to instruct on a lesser included offense when there is a basis for acquitting the defendant on the greater offense and convicting him on the lesser offense. § 556.046.2; *Mease*, 842

S.W.2d at 110–111. An instruction on the lesser included offense is not necessary if there is strong and substantial proof of the defendant's guilt of the offense charged and the evidence does not reveal a lack of the essential element of the more serious offense. *State v. Olson*, 636 S.W.2d 318, 322 (Mo. banc 1982).

■ In order to establish that appellant committed first degree assault as charged, the state was required to prove that he attempted to kill or knowingly caused serious physical injury to Taylor. § 565.050.1; *State v. Moore*, 882 S.W.2d 253, 257 (Mo.App.E.D. 1994). "Serious physical injury" is defined as "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." § 556.061(28); *State v. Williams*, 740 S.W.2d 244, 245–246 (Mo.App.E.D.1987).

Appellant asserts there was evidence of "sudden passion" so as to require the submission of the lesser included offense of assault in the second degree. In his brief, appellant argues that he and Taylor were engaged in a fight prior to the shooting which involved physical contact and, therefore, a fact question was raised as to whether appellant was acting out of sudden passion when he shot Taylor. Appellant provides no reference to the record to support his claim that there was a fight prior to the shooting.

■ Initially, we note that a manslaughter instruction is typically justified when the victim perpetrates a battery upon the defendant. *See State v. Arnel*, 846 S.W.2d 245 (Mo.App.E.D.1993). However, where a defendant continues or renews an altercation when he had an opportunity to abandon or decline further, he becomes the aggressor, even if he was not at fault in the original struggle. *State v. Hajek*, 716 S.W.2d 481, 483 [3–5] (Mo.App.1986). In order to reduce the crime to second degree there must be a sudden and unexpected encounter tending to excite the passion beyond control and the offense must occur before there is any time for passion to cool. *State v. Huff*, 831 S.W.2d 752, 755 [4, 5] (Mo.App.E.D. 1992).

■ Following the shoving incident, appellant left the yard and went into his house. Taylor got into his car to leave the area. Appellant came out of his house with a gun and twice shot at Taylor who was sitting in his car. Clearly, appellant had sufficient time to cool off when he entered his house to get his gun. *See Hajek,* 716 S.W.2d at 483[3–5]. The trial court properly refused to submit appellant's tendered instruction on assault in the second degree based upon "sudden passion" because there was no basis for acquitting appellant of the greater offense.

■ Next, appellant contends that the trial court should have instructed the jury on assault in the second degree because there was insufficient evidence of a "serious physical injury" pursuant to § 556.061(28), but rather merely showed a "physical injury." Appellant did not request an instruction on assault in the second degree submitting the element of "physical injury." Rather, appellant only proffered an instruction on assault in the second degree based upon sudden passion which includes the element of "serious physical injury." Therefore, appellant's contention is not preserved. *See State v. Adams,* 808 S.W.2d 925, 934[9] (Mo.App. 1991). Point denied.

In his last point, appellant contends that his "rights to due process and effective assistance of counsel were violated because the trial court failed to grant his motion to dismiss counsel after he filed a civil suit against his attorney which created a conflict of interest."

■ The ultimate determination as to whether appellant should have been allowed to discharge his attorney is a matter of discretion with the trial court. *State v. Anthony,* 837 S.W.2d 941, 944 [1, 2] (Mo.App.E.D. 1992). This court will not interfere unless there has been a clear abuse of discretion, and every intendment in favor of the trial court will be indulged. *Id.*

■ Further, a contention that counsel had a conflict of interest, without benefit of explicative facts or evidence affords no basis for relief. *State v. Abbott,* 654 S.W.2d 260, 274[14–17] (Mo.App.1983). The burden

of proof to show a conflict of interest is on appellant. *Id.* Such a claim cannot be sustained on the basis of speculation, and will not be upheld absent evidence of actual conflict of interest or evidence pointing to a substantial conflict of interest. *Id.*

■ We recognize that a pending lawsuit between appellant and his attorney may give rise to a conflict of interest requiring appointment of new counsel. *See Carter v. Armontrout,* 929 F.2d 1294, 1300[7] (8th Cir. 1991) (insufficient evidence where no evidence introduced, except the filing of "a 1983" action, to support defendant's claim of an irreconcilable conflict). However, a defendant who files a lawsuit against his attorney does not necessarily create such a conflict. *Id.*

Appellant was represented by several attorneys from the public defender's office. Appellant's first attorney withdrew when she left the public defender's office. Appellant next fired his second attorney because he perceived that counsel had insufficient trial experience. His third attorney, Talat Bashir, entered an appearance on July 1, 1993. One week later, appellant filed a motion to dismiss his attorney. We are unable to locate a copy of this motion in the record or a copy of the order denying this motion. Later, appellant filed another pro se motion to dismiss his attorney on August 8, 1993. From what we are able to discern from the record, appellant alleged that his attorney: (1) violated numerous "canons of ethics of the legal profession;" (2) failed to investigate the crime scene and interview witnesses; (3) failed to produce discovery information requested by appellant; and (4) failed to file certain (ambiguously described) motions. Again, this motion was denied on September 16, 1993. Appellant immediately filed another motion to dismiss his attorney alleging that he filed a "Complaint under the Civil Rights Act. 42 U.S.C. 1983" against the public defender's office based upon a conflict of interest. This was denied on September 21, 1993. Finally on November 8, 1993, appellant filed another motion to dismiss his attorney based upon: (1) his attorney's failure to call witnesses; (2) failure to prepare an adequate defense; and (3) a conflict of interest based upon the

§ 1983 lawsuit. We are unable to discern from the record whether this last motion was ever ruled on. A copy of the § 1983 petition is not in the record. However, we find no error in that the allegations in the last motion were duplicative of those in previous motions and there is no showing of a change in circumstances.

In his motions, appellant failed to provide any facts to support his contention of a conflict of interest between himself and his attorney. He alleges in his brief that the reason that he filed the § 1983 action was because of a physical altercation with his attorney. In searching the record, the only evidence we can discern on this issue is a brief mention of the event by appellant upon direct examination at his post-conviction relief hearing wherein this dialogue occurred:

Q. (By [Public Defender]) What was the basis of that lawsuit?

A. The reason for the lawsuit, because Mr. Bashir came over when we got into an argument he started pointing his finger all in my face and push me in the face with his hand. So I ask him— ...

Q. Was that the ground of the lawsuit that you filed against the public defender's office?

A. Yes.

Q. You made that same allegation in the lawsuit?

A. Yes.

Q. Did you make any other allegations in the lawsuit?

A. No.

Appellant's post-conviction relief motion was untimely filed so the motion court did not have jurisdiction to consider the motion.

■ We agree with appellant that in addition to proof of conflict, he must show that the conflict affected his attorney's performance. *See Smith v. Lockhart*, 923 F.2d 1314, 1321 [11–13] (8th Cir.1991).

First, appellant contends that his attorney failed to prepare an adequate defense because "only form motions were filed." This argument is without merit. Months before trial, his attorney filed several motions as well as an objection to the reasonable doubt instruction. His attorney raised pre-trial motions to suppress evidence and preserved these motions by objecting when the evidence was introduced and at the close of the state's case. His attorney filed a motion to compel discovery or impose sanctions, as well as proper discovery notices. Finally, his attorney endorsed witnesses on December 1, 1993.

■ Next, appellant contends that the alleged conflict affected his attorney's performance in that his attorney only interviewed the coroner for a couple of minutes prior to testifying. Prior to trial, his attorney made the court aware that the State did not disclose that they would be calling the coroner as a witness until the Friday before trial. However, appellant's attorney did have a copy of the coroner's report. Before the coroner actually testified, the attorney asked for a moment to speak to the coroner. The court insisted that both parties do their examination of the medical examiner at the same time so that the coroner could return to work promptly. Appellant has failed to allege how counsel's failure to extensively interview the coroner prejudiced him.

■ Further, appellant contends that the alleged conflict affected his attorney's performance because he only put on one witness who was an investigator from the public defender's office. Generally, the presentation of witnesses by an attorney on behalf of his client is considered a matter of trial strategy. *State v. Jones*, 863 S.W.2d 353, 360 [21, 22] (Mo.App.W.D.1993). An attorney is vested with wide latitude in defending a client and should use his or her best judgment in matters regarding trial strategy. *State v. Williamson*, 877 S.W.2d 258, 262 [11, 12] (Mo.App.W.D.1994). Appellant must show that his attorney's failure to call witnesses was something other than trial strategy. *Id.* Appellant has failed to show otherwise.

Finally, appellant contends that he was prejudiced because his attorney recommended that he not testify, although appellant wanted to. The only evidence introduced by appellant was a brief statement, at his 29.15 motion hearing, that he wanted to testify. Counsel testified that he had recom-

mended against appellant testifying and appellant told him at trial that he did not want to.

Generally, an attorney's advice to a defendant regarding whether he should testify is a matter of trial strategy, and barring exceptional circumstances, such a claim is not grounds for relief. *State v. Williams*, 853 S.W.2d 371, 377–378[22] (Mo.App.E.D.1993). Here, none are present. Point denied. JUDGMENT AFFIRMED.

CRANE, C.J., and TURNAGE, Senior Judge, concur.