**Lester LOPEZ, Movant–Appellant**

v.

**STATE of Missouri, Respondent.**

**No. SD 29463.**

Missouri Court of Appeals, Southern District, Division Two.

Dec. 8, 2009.

Mark A. Grothoff, Columbia, MO, for Appellant.

**544**

Chris Koster, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

**MICHAEL O. HENDRICKSON,**
Special Judge.

Lester Lopez (movant) appeals the judgment denying his Rule 29.15 [1] motion for post-conviction relief on his conviction for the class A felony of murder in the second degree under § 565.021. [2] In his direct appeal, this court affirmed movant's conviction. *See, State v. Lopez,* 128 S.W.3d 195 (Mo.App.2004). The motion court's order denying movant relief found movant's direct appeal counsel was not ineffective for not challenging the trial court's refusal to submit instructions for voluntary manslaughter and for not challenging the trial court's refusal to allow the testimony of one of movant's witnesses. We affirm the motion court's denial of post-conviction relief.

## I. STANDARD OF REVIEW

Our review of the denial of post-conviction relief pursuant to Rule 29.15 is limited to a determination of whether the motion court's findings of fact and conclusions of law issued in support thereof are clearly erroneous. Rule 29.15(k); *Zink v. State,* 278 S.W.3d 170, 175 (Mo. banc 2009). Findings and conclusions are clearly erroneous if, after a review of the entire record, the appellate court is left with the definite impression that a mistake has been made. *Moss v. State,* 10 S.W.3d 508, 511 (Mo.banc 2000). Only in cases where we are left with a definite impression that a mistake has been made will we reverse the motion court's determination. *Anderson v. State,* 196 S.W.3d 28, 33 (Mo. banc 2006).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Movant was charged with murder in the first degree for the beating death of his girlfriend, Sherri Westfall (victim). At trial, the jury was instructed on first degree murder, second degree murder, and involuntary manslaughter. Following the jury trial, he was convicted of murder in the second degree under § 565.021. He was sentenced to a term of life imprisonment. The judgment of conviction and sentence was affirmed by this court on movant's direct appeal. *See, State v. Lopez, supra.* After we entered our mandate affirming movant's conviction, he timely fled a *pro se* motion for post-conviction relief pursuant to Rule 29.15, counsel was appointed, and an amended motion was filed. The motion court denied movant's motion after an evidentiary hearing.

In his amended motion and in this appeal, movant alleged that his appellate counsel was ineffective for failing to raise on direct appeal the trial court's refusals to give instructions for voluntary manslaughter and to allow movant to present the testimony of one witness. The facts underlying movant's conviction have been taken, in relevant part, from this court's opinion in *State v. Lopez, supra,* and supplemented by the record on appeal.

Movant and victim resided together in Springfield, Missouri. At about 6:00 p.m. on April 6, 2001, Larry Carver, a neighbor, was sitting in the front yard of his home. He saw victim leave her house and hide behind a shed for about 30 minutes. During that time, Mr. Carver saw movant exit the house, walk around it as if he were looking for victim, and then reenter the house. Ten minutes later, Mr. Carver saw

---

**1.** All references to Rules are to Missouri Court Rules (2009).

**2.** All references to statutes are to RSMo 2000.

victim come from behind the shed and go to another neighbor's residence. Victim left that residence after a few minutes and returned to her hiding place behind the shed. Mr. Carver later saw victim lying on the back porch of her house. On the same date at about 10:30 or 11:00 p.m., Terry Swineberg observed victim run past her bedroom window. Shortly thereafter, Ms. Swineberg saw movant walk past her window. Ms. Swineberg then observed movant dragging victim back to their house. As movant was dragging victim home, Ms. Swineberg saw movant pick up a large stick and strike victim on the back, shoulders and neck area.

At 4:18 a.m. on April 7, 2001, movant placed a 911 call asking for a medical response to his house. During this telephone call, movant stated he had just awakened and found victim unresponsive on the floor. Although movant thought victim was dead, he asked the 911 dispatcher to send an ambulance. After police and emergency response personnel arrived, rigor mortis of victim had already set in and she was pronounced dead.

Shortly after 5:00 a.m., movant was transported to the Springfield Police Station and twice interviewed by Detective Scott Kamykowski. Although movant did not testify at trial, each videotaped interview was played for the jury and the jury also received a transcript of each interview.

During the evening of April 6 and the early morning hours of April 7, movant and victim engaged in two different fights that were each verbal and physical. The first was about victim being drunk and movant arriving home late from work. The second fight was about movant's whereabouts after work, victim's whereabouts during an absence of several hours from their home after the first fight, and victim not wearing pants when she woke movant while he slept after the first fight.

The first interview took place at approximately 7:20 a.m. During this interview, movant made incriminating admissions. Movant admitted he was very upset and angry. Movant admitted he slapped victim's face and neck with his open hand five or six times while arguing with her until she fell to the ground. He admitted he struck victim in the face and chest with his fists and repeatedly hit victim and kicked victim. He stated that he tore victim's clothes off during the fight and victim might have hit her head on a shelf while they were fighting. Movant said he had intercourse with victim after the fighting stopped. Movant said at about 1:00 a.m., he noted victim's body was cold and since he did not know what to do, he spent the next 30 to 45 minutes smoking a cigarette and drinking two beers. Movant indicated when he tried to pick victim up and flip her over, he heard fluids gurgling inside her. He indicated when he flipped victim on her side to check her breathing, a large amount of bloody fluid came out of her mouth, which he wiped from her face with a sock. He admitted that after doing so he saw that her face was bruised and she had a black eye. Movant said he performed CPR for 30 minutes and that he did not call 911 because he knew that if he called, they would put him in jail. Movant acknowledged that by 2:30 a.m., he knew victim was dead. He said he called his sister-in-law, a nurse, and when he asked her what to do, she told him to call 911. He also said that during the telephone conversation, he told his sister-in-law that he would probably go to jail because the police might say that he did this to victim. Movant admitted he called 911 and put clothes on victim who was lying naked on the floor. He acknowledged there was no one else at the residence that night and that victim's death was his responsibility.

Movant admitted that his altercation with victim caused her death.

Following the first interview, Detective Kamykowski went to movant's house to examine the scene and victim's body. The following items were seized as evidence: (1) a torn white T-shirt; (2) a pair of torn women's panties; (3) a bra with the cups torn out of it; (4) a bloody sock; (5) clumps of hair gathered from various locations in the house; (6) one pair of square-jawed pliers; (7) one pair of needle-nosed pliers; and (8) a carpenter's tool belt. Detective Kamykowski witnessed bruises all over victim's body, including her face, chest, shoulders, arms, back, and abdomen.

A subsequent autopsy of victim catalogued her massive injuries. The injuries included: (1) a one-half inch scalp laceration; (2) a fractured check bone; (3) a compound fracture of the nose, probably caused by an upward kick to the face, that was so severe the entire nose was essentially torn loose from the face; (4) defensive injuries in the form of large bruises to the left hand and arm and a broken right ulna and radius to the right arm; (5) injuries to both breasts caused by squeezing of tissue by needle-nosed and square-jawed pliers; (6) bruising to the external genitalia caused by either blows or twisting; (7) 24 separate fractures in the rib cage; (8) hemorrhaging and collapse of the lungs; (9) a laceration to the liver; (10) a punctured diaphragm; (11) a ruptured spleen; (12) bruised kidneys; (13) bruising of the intestines; (14) internal bleeding; (15) a subdural hematoma; and (16) swelling of the brain. The medical examiner opined the time required to inflict victim's injuries was a minimum of one hour.

Detective Kamykowski returned to the police station and conducted a second interview of movant. The detective told movant the injuries found to victim's body were not consistent with movant's account of what had happened. Detective Kamykowski showed movant pictures of victim's body. Movant acknowledged that he caused all of the injuries; that no one else but him could have caused the injuries. Movant stated that he had been "so damn drunk" and just did not remember. He admitted that he must have hit victim multiple times to cause the degree of injuries she suffered. Movant admitted slapping victim, hitting her with his fists, and kicking her. He admitted kicking victim while she was lying on the floor. Movant admitted ripping her clothes off while they were fighting. He acknowledged that he had intercourse with victim after the fighting stopped. Movant stated victim was scared for her life. Movant asked Detective Kamykowski if he should plead guilty to murder. Movant stated that he was guilty because they were fighting. He then stated, "What I done to her, they should give that to me."

At trial, movant sought to call Brian Hanson, but the court sustained the state's objection to Mr. Hanson's testimony and did not allow it. According to movant, Mr. Hanson's testimony would provide evidence that the victim was intoxicated and had propositioned Mr. Hanson, and that such evidence would provide a basis for a voluntary manslaughter instruction. Once the trial court refused to allow Mr. Hanson's testimony, movant's trial counsel admitted Mr. Hanson's deposition testimony as an offer of proof but read into the record only six questions and six answers that, in this record on appeal, demonstrate Mr. Hanson would testify that the victim sexually propositioned him. After the offer of proof, the court again disallowed Mr. Hanson's testimony and announced it would reserve whether to give a voluntary manslaughter instruction until the instruction conference. During the instruction conference, movant offered a voluntary

manslaughter instruction as a lesser included instruction of conventional murder in the second degree, as well as the required additional paragraph to the instruction of conventional murder in the second degree, but they were refused by the trial court.

At hearing, movant's appellate counsel testified that even though it was supported by evidence, she had no strategic reasons for not raising the court's refusal to allow the testimony of Mr. Hanson or the court's refusal to give the voluntary manslaughter instruction, although each issue was preserved for appeal by their inclusion in the motion for a new trial.

Following the hearing, the motion court denied movant's motion. In its order denying relief, the motion court found that appellate counsel was not ineffective in her failure to argue on direct appeal the trial court's refusal to give a voluntary manslaughter instruction because there was no adequate basis to support it and refusal to allow the testimony of Mr. Hanson because his testimony was irrelevant. Movant believes that Brian Hanson's testimony would have established why movant and victim fought that night, would have corroborated movant's videotaped statement to the police, and would have provided a basis for a voluntary manslaughter instruction. This appeal followed.

### III. ISSUES PRESENTED

Movant presents two points on appeal. Both points assert movant was denied effective assistance of appellate counsel. Movant asserts his appellate counsel was ineffective for her failures to argue on direct appeal the court's refusal to give a voluntary manslaughter instruction (Point I), and the court's refusal to allow the testimony of Mr. Hanson (Point II). Movant asserts there is a reasonable probability that the outcome of his direct appeal would have been different had appellate counsel raised either of these issues on direct appeal and if they had been, he would have been granted a new trial.

### IV. DISCUSSION

■ Like a claim based on ineffective assistance of trial counsel, movant must prove his appellate counsel's performance was unreasonable and that movant was prejudiced thereby. *Taylor v. State,* 262 S.W.3d 231, 253 (Mo. banc 2008). To establish a claim of ineffective assistance of appellate counsel, a "[m]ovant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Id., quoting Williams v. State,* 168 S.W.3d 433, 444 (Mo. banc 2005).

In his first point, movant claims appellate counsel was ineffective for her failure to raise on direct appeal the trial court's failure to submit a jury instruction on voluntary manslaughter. The motion court denied this claim. The motion court found the instruction was not supported by the evidence.

■ A person commits the crime of voluntary manslaughter if he "[c]auses the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of subsection 1 of section 565.021,[3] except that he caused the death under the influence of sudden passion arising from adequate cause." § 565.023.1(1). *State v.*

---

3. Section 565.021.1(1) states:

"A person commits the crime of murder in the second degree if he:

(1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person."

*Stidman,* 259 S.W.3d 96, 101 (Mo.App. 2008). "Sudden passion" is "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." § 565.002(7). "Adequate cause" is defined as "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." § 565.002(1).

At trial, movant offered that the following paragraph be added to the conventional second-degree murder instruction:

Third, that defendant did not do so under the influence of sudden passion arising from adequate cause....

As used in this instruction, the term "sudden passion" means passion directly caused by and arising out of provocation by Sherri Westfall which passion arose at the time of the offense. The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

Movant also offered the following instruction on voluntary manslaughter:

If you do not find the defendant guilty of murder in the second degree, you must consider whether he is guilty of voluntary manslaughter.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or between April 6, 2001, and April 7, 2001, in the County of Greene, State of Missouri, the defendant caused the death of Sherri Westfall by beating her, and

Second, that the defendant knew or was aware that his conduct was causing the death of Sherri Westfall,

then you will find the defendant guilty of voluntary manslaughter.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of voluntary manslaughter.

If you do find the defendant guilty of voluntary manslaughter, you will assess and declare the punishment at imprisonment for a term of years fixed by you, but not less than five years and not to exceed fifteen years.

These two instructions movant offered were modeled after Missouri Approved Instructions—Criminal 3d 313.04 and 313.08.

Movant's theory at trial in support of a finding of sudden passion and submission of a voluntary manslaughter instruction was that movant and victim engaged in two fights; that victim left the residence for several hours between the two fights; and that movant believed that while victim was gone, she had cheated on him. Although in his first interview movant claimed to have started the second fight when, upon her return, movant asked victim where she had been, and although movant never indicated in either interview that the second fight was caused or escalated by an issue of fidelity, movant's counsel nevertheless argued that victim's absence, along with movant's belief that victim was cheating on him, escalated the second fight to the level of sudden passion. Movant's trial counsel argued:

I contend, Your Honor, that the—her absence, her physical absence, that night combined with his belief that she was cheating on him in the general sense, and I think you can infer that he thought she was cheating on him while she was gone for the two-hour period.

That that is the—that led to further escalation of argument, which resulted in her death.

I believe that that does support an inference of sudden passion due to adequate cause. While it is true, he did not know that she had gone over and propositioned Mr. Brian—

THE COURT: Hanson

COUNSEL: Hanson. I'm sorry. He did not have knowledge of that specific incident. But I think her—her period of unexplained absence from the house, storming out after they had a fight, he could very well have inferred, and the jury could infer that he inferred that she was out cheating with him whether he knew that she specifically with whom or where, uh, doesn't matter to his motivations.

So I think that that supports a sudden passion, a—a passionate event here that would support giving the instruction on voluntary manslaughter.

As previously stated, movant did not testify at trial. The only evidence as to the events of the night of April 6 and the morning of April 7, 2001, was the two videotaped interviews of movant and the testimony of movant's neighbors and the medical examiner. During the first interview, movant stated that after the first fight, victim left their house. Movant stated that after she left, he "was like 'Well, whatever,'" and decided to lie down and go to sleep. Movant stated that after victim returned several hours later and woke him up, he started a second fight after he asked her where she had been. Detective Kamykowski asked movant directly whether he thought victim was cheating on movant. The record in this appeal is silent as to his response. Although the record on appeal includes the jury's transcript of each videotaped interview of movant, movant's answer to the question posed by Detective Kamykowski inquiring about movant's belief that victim was cheating is left blank on the transcript.[4] Further, there was no mention of victim's cheating by either movant or Detective Kamykowski in the second interview.

There was no evidence before the jury that victim had cheated on movant that evening or any other time. The record on appeal reveals no evidence before the jury that movant had reason to believe victim had cheated on him. In neither interview did movant indicate that he and victim ever argued before that evening about her cheating on him, let alone argued about it the night of the crime. In fact, when the topic was raised by Detective Kamykowski's question in the first interview, movant stated that victim had no best friend, did not know anyone in Springfield and when specifically asked, hypothetically speaking, that *if* she had been cheating on him, whom she would do that with, movant stated, "I don't even know."

---

4. Videotapes of Detective Kamykowski's two interviews of movant, Exhibits 25 and 29, were admitted at trial and played for the jury. The videotapes of the interviews are not before this court as they were not included in the record on appeal. The jury was given typewritten transcripts of the contents of the videotapes. The transcripts are included in the record on appeal. In the first interview, movant's answer to Detective Kamykowski's question about victim cheating is left with a blank on the transcript. The videotaped interview may provide movant's answer; however, the videotape of the first interview is not before this court for review. The record on appeal in a Rule 29.15 proceeding is governed by Rule 81.12. Movant bears the burden of providing the appellate court with a record on appeal that contains all the evidence necessary for this court to determine the issues he raised. Rule 81.12(a) and (d); *Carter v. State,* 253 S.W.3d 580, 582 (Mo.App.2008); *Collins v. State,* 226 S.W.3d 906, 911 (Mo.App.2007).

Nothing in the record of this appeal regarding victim's fidelity supports a finding of sudden passion. Although movant believed that his statements, along with evidence at trial, were enough to support a finding that his degree of passion impaired his capacity for self control requiring a voluntary manslaughter instruction, the record does not support it. His statements do not demonstrate that he reasonably believed victim had cheated on him at any time, let alone that night. Further, even if he or the jury believed she had been cheating, none of movant's statements in the transcript of either interview indicate as much. Accordingly, the evidence does not rise to a level of "adequate cause" "that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control," thereby requiring an instruction on voluntary manslaughter.

■ Nothing in the record of this appeal supports a finding that victim's death was sudden. A finding of sudden passion requires a "sudden" event. *State v. Jacoway*, 11 S.W.3d 793, 797–98 (Mo.App.1999); *State v. McCoy*, 971 S.W.2d 861, 864 (Mo. App.1998); *State v. Boyd*, 913 S.W.2d 838, 842 (Mo.App.1995); *State v. Newlon*, 721 S.W.2d 89, 92 (Mo.App.1986). "For adequate cause [for sudden passion] to exist, a sudden, unexpected encounter or provocation must excite an uncontrolled passion, be it rage, anger, or terror." *State v. Jacoway, supra.*

[I]t "is not the assault or the provocation alone that reduces the grade of the crime, but it is the sudden happening or occurrence of the provocation so as to render the mind incapable of reflection and obscure the reason so that the elements of malice and deliberation necessary to constitute murder are absent, and therefore the crime is not murder, but manslaughter." *State v. Mudgett,* 531 S.W.2d 275, 280 (Mo.banc 1975), *citing, State v. Clough,* 327 Mo. 700, 705, 38 S.W.2d 36, 38 (Mo.1931). *Id.*

Although in his first interview movant affirmed Detective Kamykowski's statement that movant was out of control and that his outrage and anger went too far, his killing of the victim was not sudden. Case law finding sufficient evidence of sudden passion for submission of voluntary manslaughter has consistently involved a sudden death, such as from a gunshot or blow to the victim's head. *State v. Avery,* 120 S.W.3d 196 (Mo. banc 2003); *State v. Redmond,* 937 S.W.2d 205 (Mo. banc 1996); *State v. Fears,* 803 S.W.2d 605 (Mo. banc 1991); *State v. Fouts,* 939 S.W.2d 506 (Mo. App.1997); *State v. Richards,* 795 S.W.2d 428 (Mo.App.1990). The evidence before the jury was undisputed that victim died as a result of a combination of multiple injuries inflicted over a period of time that was not sudden. Victim suffered extensive injuries. There was evidence that the time required to inflict the multitude of victim's injuries was at least one hour. *See, State v. McCoy, supra.* Some of the injuries were inflicted after victim stopped resisting and was unconscious, but prior to her death. The continual beating after a victim is no longer fighting back is not consistent with a claim of sudden passion. *State v. Jacoway, supra,* at 798. *See also, State v. Boyd, supra.*

■ Movant also stated he could not remember what had happened during the fight with victim because he was "so damn drunk." Movant acknowledged that he must have caused victim's injuries; that no one else could have caused her injuries; but that he did not remember injuring victim to the extent depicted in the photographs. A failure to remember exactly what happened at the time of death "sim-

ply [is] not sufficient to have required" an instruction on voluntary manslaughter. *State v. Merchant,* 791 S.W.2d 840, 843 (Mo.App.1990). Neither will intoxication of the victim alone without evidence that, when intoxicated, victim became violent and that, accordingly, the accused feared the victim. *State v. Jacoway, supra,* at 797. Although movant's statements indicated that victim became "crazy" when she was in an intoxicated condition, he never indicated that he feared her when she was in such a condition.

The motion court found insufficient evidence to support a finding of sudden passion. The motion court's findings are presumptively correct. *Cook v. State,* 193 S.W.3d 378, 381 (Mo.App.2006). This court finds from the record before it that appellate counsel was not ineffective for her failure to raise on direct appeal the trial court's refusal of movant's proffered instructions on voluntary manslaughter. Movant must establish that there is a reasonable probability that the outcome of the appeal would have been different had the claimed error been raised. *Williams v. State, supra.* Since movant has not done so, Point I is denied.

In his second point, movant claims his appellate counsel was ineffective for her failure to raise on direct appeal the trial court's refusal to allow the testimony of Brian Hanson. The motion court denied this claim. The motion court found the testimony not relevant in that movant had no knowledge of the alleged incident Mr. Hanson was to testify about, stating that it is "illogical to suggest that [m]ovant became enraged over something he did not know about." The motion court's findings are presumptively correct. *Cook v. State, supra.*

Movant claims the proffered testimony was both logically and legally relevant as it would have established the reasons that victim and movant fought; would have corroborated movant's videotaped statements to police; and would have provided a basis for a voluntary manslaughter instruction. He contends a reasonable probability exists that his conviction would have been reversed had appellate counsel raised the exclusion of such testimony as an issue on direct appeal.

Movant's trial counsel argued that Mr. Hanson's testimony would indicate that victim came to Mr. Hanson's house, she appeared disheveled and intoxicated, and sexually propositioned him. Although not included in the record on appeal, at trial movant admitted the deposition testimony of Mr. Hanson. In addition, movant's trial counsel made the following offer of proof by reading an excerpt from Mr. Hanson's deposition into the record:

QUESTION: "Did she at any point try to proposition in a sexual way?"

ANSWER: "In a sexual way? Yes, she did."

QUESTION: "All right. Tell me about that."

ANSWER: "Well, she had asked me if I wanted to go to the back room and have sex with her, and I said, no."

QUESTION: "Is that the exact words she used or how did she phrase it, if you remember?"

ANSWER: "She used profanity. And she said, 'Do you want to go back in the back room and' "—

QUESTION: "Go ahead and tell me."

ANSWER: "She said, 'Do you want to go back in the back room and f____.['] And I said no."

QUESTION: "Okay."

ANSWER: "And I kept telling her to leave."

QUESTION: "Did she do anything further of a suggestive nature?"

ANSWER: "No."

Movant asserts this testimony supported his theory that movant believed victim was cheating on him. In concluding the offer of proof, movant's trial counsel argued:

Your Honor, I believe the testimony is relevant. Um, because in his videotaped interrogation, the defendant made several statements at various times that he suspected that [victim] was cheating on him and that she was seeing other men. And he indicated in his statements that that could have been a motivating factor as to why they had an argument—one of the motivating factors as to why they argued, which eventually led to the physical altercations.

I think it's relevant to—it corroborates his testimony in that respect that she was, in fact, out propositioning another person as he believed, although it is true that he was not aware of this specific incident.

I do think it's relevant to his—it corroborates his statement. And further, Your Honor, I think it could it [sic] legitimately provides a basis for submission of voluntary manslaughter instruction. If the jury believed that they—he confronted her about cheating on him, and that led to the argument, and then passions got out—arose and got out of hand.

Now, I—I think that it's—it's—passion must be based upon something of an imminent nature, not—not just done in the past. And I think the fact that she left the home, that conduct, and returned two hours later, or whatever length of time it was she was gone, it was a period—a significant period of time that she was gone. And when she returned [movant] indicated in his statements that he was upset that she was gone so long.

I think that's the—the provocative factor that provides the basis for our voluntary manslaughter instruction. And without this testimony, I think that it impedes our ability to get that instruction from the court. [ [5] ]

Movant's counsel conceded that his ability to submit a voluntary manslaughter instruction was "impede[d]" without Mr. Hanson's testimony and conceded that movant did not know that victim had propositioned Mr. Hanson. Movant's appellate counsel on direct appeal stated at hearing that she did not raise the refusal of the court to allow Mr. Hanson's testimony because she did not see it as a "very strong issue." Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

As discussed in the analysis of movant's first point, there is insufficient evidence in the transcripts of movant's interviews to demonstrate that movant believed victim was cheating on him. Although the offer of proof in the record on appeal does demonstrate that victim propositioned Mr. Hanson, it corroborates nothing of movant's interview statements. Even if movant did believe victim was cheating on him, there was no evidence that it was an issue

---

5. Defense counsel argued that movant made "several statements at various times" as to movant's belief that victim was cheating on him. This court's review of the jury's transcripts indicates Detective Kamykowski asked movant in the first interview only if he thought victim was cheating on movant. As indicated in footnote 4, *supra*, the videotape of the first interview is not included in the record on appeal. The transcripts are. The transcripts do not indicate movant ever said he believed victim was cheating on him that night or at any other time.

that led to either fight. Even if movant did believe victim was cheating on him, there was no evidence that movant knew about victim propositioning Mr. Hanson prior to, or at any time near, the time of victim's death. Movant's trial counsel conceded that fact. Mr. Hanson's testimony about the victim's proposition is irrelevant since movant did not know about it. Accordingly, the record on appeal of Mr. Hanson's testimony provides nothing to further support its relevancy or the necessity of a voluntary manslaughter instruction.

This court finds no reasonable probability that movant's conviction and sentence would have been reversed and remanded for a new trial had appellate counsel raised on direct appeal the court's refusal to allow the testimony of Mr. Hanson. As appellate counsel was not ineffective, Point II is denied.

The judgment denying movant's Rule 29.15 motion for post-conviction relief is affirmed.

LYNCH, P.J., and RAHMEYER, J., concur.